R. Scott Taylor, OSB No. 74324
Clinton L. Tapper, OSB No. 084883
Taylor & Tapper
400 E 2nd, Suite 103
Eugene, OR 97401
Ph: 541-485-1511 / fax: 541-246-2424
Scott@taylortapper.com
Clinton@taylortapper.com

Nick Gower, OSB No. 143274
PMB #97 – 4776 Commercial St. SE
Salem, Oregon 97302
Phone: (503) 507-3973
Fax: (503) 437-9170
Nick@gower.law

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

PETER S. BOGARD and WENDY V. BOGARD,

Plaintiff,

vs.

COUNTRY MUTUAL INSURANCE COMPANY,

Defendant.

CASE NO.: 1:19-cv-00705-AA

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ORAL ARGUMENT REQUESTED

## INTRODUCTION

This case involves unique questions of law relating to the evolution of cannabis laws, specifically changes to the controlled substances act in the 2018 Farm Bill, and insurance policy exclusions related to the processing and manufacturing of controlled substances.

Plaintiffs' suffered an accidental fire on or about January 6, 2019, which caused damage to an auxiliary private structure on the property. This fire occurred during the process of Plaintiff-Peter Bogard manufacturing CBD (cannabidol) salve derived from industrial hemp. While Defendant answer admits Plaintiff-Peter Bogard was in the process of manufacturing CBD (cannabidol) salve from industrial hemp, Defendant claims there is no coverage for the loss because "Plaintiffs failed to prove the dry source material from which the CBD oil Plaintiffs were using at the time of the fire was sourced from lawfully grown hemp, which contained no more than 0.3% Delta 9 THC by dry weight."

As written, Defendant's affirmative defense is insufficient. If the Court construes the affirmative defense as properly asserting the Policy's Controlled Substances Exclusion, the exclusion is inapplicable as a matter of law. The Court should grant Plaintiffs' Motion for Partial Summary Judgment on the issue of liability and proceed to a determination of Plaintiffs' damages.

## STATEMENT OF FACTS

***Plaintiffs' Hemp Activities and the Loss***

Plaintiffs were growing industrial hemp and manufacturing industrial hemp products under the 2014 Farm Bill's "Agricultural Pilot Program" for Industrial Hemp.[1] On or about January 7,

---

[1] *See* Exhibit 5.

2019, Plaintiff-Peter Bogard was manufacturing CBD salve derived from industrial hemp in his detached garage.[2] During the process of making CBD salve, Plaintiff-Peter Bogard stepped away, took take a nap, and awoke to discover the CBD oil had caught fire in the garage.[3] The fire caused substantial damage to Plaintiffs' garage and the personal property contained therein (hereafter "the Loss").[4]

The source of industrial hemp for manufacturing the CBD oil came from two separate crops – the 2017 harvest and the 2018. First, the 2017 hemp crop was tested for compliance prior to being used. The 2017 hemp crop was tested by EVIO Labs on November 28, 2017.[5] The EVIO Labs report for the 2017 hemp crop found that the total THC was 0.381% by dry weight; however, the delta-9 tetrahydrocannabinol of the sampled material was "< LOQ," meaning the result for that cannabinoid was "below the limit of quantitation" with the limit of quantitation being 0.02000% on a dry weight basis.[6] The results of the EVIO Labs testing of the 2017 hemp crop were only valid until November 28, 2018.[7]

Second, the 2018 hemp crop was tested for compliance prior to being used. The 2018 hemp crop was tested by EVIO Labs on May 4, 2018.[8] The EVIO Labs report for the 2018 hemp crop

---

[2] Dkt. #3 at ¶ 16; Dkt. #6 at ¶ 1.

[3] Peter Bogard Deposition Excerpts 43:14-22.

[4] Dkt. #3 at ¶ 10; Dkt. #6 at ¶ 1.

[5] *See* Exhibit 1 at 1.

[6] *See* Exhibit 1 at 1.

[7] *See* Exhibit 1 at 1.

[8] *See* Exhibit 2 at 1.

found that the total THC was 0.259% by dry weight; however, the delta-9 tetrahydrocannabinol of the sampled material was only 0.0365% on a dry weight basis.[9] The results of the EVIO Labs testing of the 2018 hemp crop were valid until May 3, 2019.[10]

Following the Loss, Plaintiffs promptly filed a claim with Defendant and Defendant investigated the claim.[11] Defendant summarily denied the claim on the basis of the Policy's Controlled Substances Exclusion.[12] The Policy's Controlled Substances exclusion states:

> **Exclusions – SECTIONS 2 through 6**
>
> **A.** "We" do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not there was widespread damage or affects a substantial area or the loss arises from natural, man-made, or external forces, or occurs as a result of any combination of these.[13]
>
> ***
>
> **17. Controlled Substance**
>
> Loss or damage arising out of the use, sale, delivery, transfer, possession, growing, production, processing, warehousing, transportation, or manufacturing, by any "insured" or with any "insured's" knowledge, of a controlled substance, as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended), regardless of whether the controlled substance is legal under any state law (for example: marijuana).[14]

---

[9] *See* Exhibit 2 at 1.

[10] *See* Exhibit 2 at 1

[11] Dkt. #3 at ¶ 11, ¶ 14; Dkt. #6 at ¶ 1.

[12] *See* Exhibit 3.

[13] Exhibit 4 at 71.

[14] Exhibit 4 at 85 (endorsement amending the Policy's Controlled Substances Exclusion).

***Material Changes to Cannabis Laws***

Prior to December 20, 2018, notwithstanding the "Agricultural Pilot Program" for Industrial Hemp, the Controlled Substances Act made no distinction between marihuana (hereafter "marijuana") and hemp (hereafter "Prior CSA").[15] The Prior CSA listed both marijuana and tetrahydrocannabinols as Schedule I controlled substances.[16] Notwithstanding the Prior CSA, industrial hemp could be grown pursuant to the "Agricultural Pilot Program.[17]

On December 20, 2018, with the passage of the Agricultural Improvement Act of 2018 (hereafter "2018 Farm Bill"), the Controlled Substances Act was immediately amended and created a distinction between marijuana and hemp (hereafter "Current CSA").[18] Hemp and tetrahydrocannabinols from hemp were explicitly removed from the Current CSA's schedule of controlled substances, with reference to the Agricultural Marketing Act of 1946's (amended by the 2018 Farm Bill) definition of hemp as:

> [T]he plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.[19]

---

[15] *See* 21 U.S.C. § 812 (2012)

[16] *See* 21 U.S.C. § 812, Schedule I (c) (2012).

[17] *See* 7 U.S.C. § 5940 (2014).

[18] Agriculture Improvement Act of 2018, Public Law No. 115-334, 132 Stat 4490 ("2018 Farm Bill"); 21 U.S.C. §§ 811-812.

[19] Agriculture Improvement Act of 2018, Public Law No. 115-334, 132 Stat 4490; 21 U.S.C. § 812; 21 U.S.C. § 802(16); 7 U.S.C. § 1639o.

## STANDARDS

Summary Judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Id*.

## ARGUMENT

The Court should determine the Policy's Controlled Substances Exclusion does not apply to this Loss. First, Plaintiffs were not manufacturing or processing a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. The Current CSA excludes hemp and tetrahydrocannabinols in hemp from the schedule of controlled substances. The Current CSA's differentiation of hemp from marijuana and differentiation of tetrahydrocannabinols in marijuana from tetrahydrocannabinols in hemp is based solely on the percentage of delta-9 tetrahydrocannabinol present on a dry weight basis. Plaintiffs' laboratory testing demonstrates that the source hemp contained not more than 0.3% delta-9 tetrahydrocannabinol on a dry weight basis.

Second, Defendant's Answer concedes the crucial question for determination as to whether Plaintiffs' were manufacturing or processing a controlled substance. Plaintiffs' were manufacturing or processing industrial hemp which is not a scheduled substance under the Current CSA.

Third, Defendant has not asserted a valid affirmative defense. Defendant claims that Plaintiffs failed to prove that the hemp was lawfully grown. Plaintiffs do not have the burden of disproving the applicability of the Policy's exclusion – this burden falls on Defendant. Further, whether the hemp was lawfully grown is irrelevant. The only question relevant to Defendant's exclusion is if Plaintiffs were manufacturing or processing a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.

**1. Plaintiffs' Source Cannabis Contained No More Than 0.3% Delta-9 Tetrahydrocannabinol**

Plaintiffs' 2017 harvest and 2018 harvest used at the time of the Loss were not controlled substances as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. The only controlled substances that Plaintiffs' 2017 harvest and 2018 harvest could potentially fall under are the Schedule I substances tetrahydrocannabinol or marijuana. In both instances, "hemp, as defined in section 1639o of title 7" is excluded from the Current CSA's list of controlled substances.[20]

Hemp is defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more

---

[20] *See* 21 U.S.C. § 812, Schedule I (c)(17); *see also* 21 U.S.C. § 802(16)(B)(i).

than 0.3 percent on a dry weight basis."[21] The lab testing of both the 2017 harvest and the 2018 harvest show both harvests contained less than 0.3% delta-9 tetrahydrocannabinol on a dry weight basis.[22] Based on the lab tests, Plaintiffs were manufacturing or processing hemp, which is **not** a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.[23] Accordingly, the Policy's Controlled Substances Exclusion is not applicable to Plaintiffs' Loss.

Plaintiffs anticipate that Defendant will attempt to confuse the issues in its briefing by arguing that the requirement of not more than 0.3 percent delta-9 tetrahydrocannabinol concentration imposes a greater obligation than the actual text of the Current CSA. While Plaintiffs will address these arguments as they are raised, it is important to note that the only statutes relevant to determine the applicability of the Policy's Controlled Substances Exclusion are the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Any references to other statutes are outside the four corners of the Policy and not relevant to the Court's analysis.

**2. Defendant Admits Plaintiff's Source Product was Industrial Hemp**

Defendant's Answer admits that the CBD salve Plaintiffs were manufacturing prior to the Loss was derived from industrial hemp.[24] "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the

---

[21] 7 U.S. Code § 1639o (1).

[22] *See* Exhibit 1 at 1; *see also* Exhibit 2 at 1.

[23] *See* 21 U.S.C. § 812, Schedule I (c)(17); *see also* 21 U.S.C. § 802(16)(B)(i).

[24] Dkt. #3 at ¶ 16; Dkt. #6 at ¶ 1.

need for proof of the fact." *Reynoso v. Fid. Nat'l Title Ins. Co.*, No. 03:13-cv-01600-HZ, 2013 US Dist LEXIS 182533, at *13 (Dist. Or. 2013) (*citing Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).

Hemp has particular definitions under both the 2014 Farm Bill and the 2018 Farm Bill. Under the 2014 Farm Bill, industrial hemp is defined as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."[25] Under the 2018 Farm Bill, hemp is defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."[26]

Under either definition, Defendant's judicial admission that the CBD salve Plaintiffs were manufacturing prior to the Loss was derived from industrial hemp ends this court's analysis. Marijuana and hemp are not classified the same under the Current CSA. Because both parties agree that the source cannabis product was industrial hemp, it necessarily contained no more than 0.3% delta-9 tetrahydrocannabinol. Accordingly, the Policy's Controlled Substances Exclusion is not applicable to Plaintiffs' Loss.

**3. Defendant's Affirmative Defense is Deficient**

Defendant's sole affirmative defense, even if true, does not escape it from liability for Plaintiffs' Loss. Defendant's only alleged defense to liability is:

---

[25] 7 U.S. Code § 5940 (a) (2) (2014).

[26] 7 U.S. Code § 1639o (1).

> Plaintiffs failed to prove the dry source material from which the CBD oil Plaintiffs were using at the time of the fire was sourced from lawfully grown hemp, which contained no more than 0.3% Delta 9 THC by dry weight.

Defendant's affirmative defense is legally insufficient. While Plaintiffs bear the burden of establishing coverage in the first instance, Defendant bears the burden of proof for any applicable exclusions. *Beneficial Fire and Cas. Ins. Co.*, 349 Or. 117, 127 (2010).

Here, there is no dispute establishing coverage in the absence of the applicability of any Policy exclusions.[27] Defendant does not specifically assert any exclusion within the Policy, but claims Plaintiffs failed to prove their source material for making CBD oil was lawfully grown hemp. As the affirmative defense stands, even if true, Plaintiffs would still be entitled to coverage under the Policy, because (1) whether the hemp was lawfully grown or not is irrelevant for coverage under the Policy, because it was hemp, which is not a controlled substance under the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812, and (2) Plaintiffs do not have the burden to negate the applicability of an exclusion to coverage.

To the extent the Court reads Defendant's affirmative defense more charitably as actually asserting the Policy's Controlled Substances Exclusion, the exclusion does not apply for the reasons set forth in this motion.

**CONCLUSION**

For the aforementioned reasons, the Policy's Controlled Substances Exclusion is not applicable. The Court should grant Plaintiffs' Motion for Partial Summary Judgment on coverage and proceed to resolving Plaintiffs' damages.

---

[27] *See* Dkt. #3; *see also* Dkt. #6.

DATED: September 18, 2020

**GOWER LAW LLC**

s/ **Nick Gower**

______________________________

**Nick Gower**, OSB #143274
nick@gower.law
Associated Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that on the below date, a true and correct copy of the foregoing

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

by facsimile, first class mail, and/or deposit into the CM/ECF system on the following:

Country Mutual Insurance Company

By and through Defendant's counsel:

Bernard S. Moore, OSB # 843051
Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.
2592 East Barnett Road
Medford, Oregon 97504-8345
Fax: 541-779-6379

DATED: September 18, 2020

**GOWER LAW LLC**

s/ **Nick Gower**

________________________

**Nick Gower**, OSB #143274
nick@gower.law
Associated Counsel for Plaintiffs