Bernard S. Moore, OSB #843051
moore@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 East Barnett Road
Medford, OR 97504-8345
Telephone:  541-779-2333
Facsimile:  541-779-6379
    *Of Attorneys for Defendant Country Mutual Insurance Company*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **PETER S. BOGARD and WENDY V. BOGARD**,<br>               Plaintiffs,<br><br>     v.<br><br>**COUNTRY MUTUAL INSURANCE COMPANY**,<br>               Defendant. | Case No. 1:19-cv-00705-AA<br><br>**DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**FRCP 56**<br><br>**Oral Argument Requested** |

## LR 7-1

Pursuant to LR 7-1, the parties conferred by telephone on July 10, 2020 regarding this Motion and agreed that cross motions for summary judgment were appropriate.

**Certificate of Compliance with Word Count Requirement**

Pursuant to LR 7-2(b), the motion for summary judgement and memorandum in support of the motion do not exceed 11,000 words, or in the alternative, 35 pages. This complies with the

**Page 1 – DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

applicable word-count limitation under LR 7-2(b), because it contains no more than 5,547 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel

## FACTUAL BACKGROUND

On January 6, 2019, a fire occurred on Plaintiffs' property while Plaintiff, Peter Bogard, was making salve from cannabis containing the compound cannabidiol (CBD). (Compl. (ECF No. 3), ¶¶ 10, 16). The fire was caused by Peter Bogard leaving a container of coconut oil on a heat source unattended (Peter Bogard Deposition, pg. 43 (Exhibit 1)). Plaintiffs filed a claim with Defendant Country Mutual Insurance Company ("Country"), which Country denied based on the controlled substances exclusion found in the policy. It is Country's position that the cannabis being used by plaintiff at the time of the loss was marijuana, not hemp. (Compl., ¶¶ 11, 14). The controlled substances exclusion in the Policy states:

> **Exclusions - SECTIONS 2 through 6**
> **A.** "We" do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not there was widespread damage or affects a substantial area or the loss arises from natural, man-made, or external forces, or occurs as a result of any combination of these.
> \*\*\*
> **17. Controlled Substance**
> The manufacture or processing by an "insured' or with any "insured's" knowledge of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.

(Compl., ¶ 15).

The cannabis Plaintiff was using at the time of the fire (Exhibit 2 Response to Request for Admission Nos. 7 & 8) was tested on November 28, 2017.  That testing showed the subject cannabis contained:

**Page 2 – DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

| Cannabinoids | (mg/g) | (% weight) |
|---|---|---|
| TOTAL THC ((TCHA*0.877) + Δ9THC) | | 0.381 |
| THCA | 4.35 | 0.435 |
| Delta 9-THC | <LOQ | <LOQ |

(Exhibit 3).

The results set forth in Exhibit 3 were a result of testing using liquid chromatography and the following conversion formula: Total THC = (0.877 x THCA) + THC.  (Exhibits 4 & 5, Expert Report, Deposition of Jason Wilson.

## POINTS AND AUTHORITIES

The plant Cannabis sativa L. can be marijuana or hemp. From a regulatory standpoint, the difference between marijuana and hemp is the concentration of delta-9 tetrahydrocannabinol (THC), the primary intoxicating compound found in marijuana. Historically, marijuana was deemed a Schedule I controlled substance by both the Food and Drug Administration (FDA) and the Drug Enforcement Administration (DEA) pursuant to the 1970 Controlled Substances Act (CSA). 21 U.S.C. §§801 et seq.; Title 21 C.F.R. Part 1308.11.  Specifically, marijuana is broadly defined in the CSA:

> The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. §802(16).

Because of its Schedule I status, the unauthorized manufacture, distribution, dispensing of, and possession of marijuana is prohibited. Under the CSA, Schedule I substances receive the

DEA's strictest form of regulatory treatment and are the only category that cannot be prescribed by a physician. Until recently, all cannabis was considered a Schedule I controlled substance. That changed in 2018. The Agricultural Act of 2018, (2018 Farm Bill) amended the 1970 CSA by declassifying hemp as a Schedule I controlled substance and shifting its supervision from the DEA to the United States Department of Agriculture ("USDA"). Congress also changed the definition of hemp further distinguishing hemp and marijuana under U.S. law. The definition of hemp is codified in Section 297A of the Agricultural Marketing Act of 1946 (AMA, 7 U.S.C. 1621 et seq.) as:

> (1) Hemp. The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

As of the passage of the 2018 Farm Bill, hemp, as defined above, is no longer a controlled substance while marijuana remains so. The Plaintiffs allege the cannabis used at the time of the fire is hemp, because the "delta-9 THC", as shown on the test (Exhibit 3), is below 0.3% on a dry weight basis. (Compl., ¶ 21). In making this argument, Plaintiffs ignore those portions of CSA and the 2018 Farm Bill which dictate that the substance was in fact marijuana not hemp. Under both the CSA and the 2018 Farm Bill, the "Total THC" result is the finding that controls the determination of whether the cannabis in question is hemp or marijuana. Because the test on Plaintiff's sample reveals a total THC of 0.381%, the substance being used by plaintiff at the time of the fire is, by law, marijuana subject to the policy's controlled substance exclusion.

The 2018 Farm Bill at § 297B allows States to regulate cannabis, and to adopt cannabis testing procedures to distinguish hemp from marijuana. The State plan must include "a procedure for testing, cannabis using "postdecarboxylation" or other similarly reliable methods. *2018 Farm*

*Bill* § 297B(a)(2)(A)(ii).

This process, and what it means, is described in the report of defendant's expert (Exhibit 4). For convenience that report is set forth in its entirety here:

> The 2018 Farm Bill defines Hemp as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta—9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."
>
> The plant Cannabis sativa L. contains THC in two primary forms, delta—9-tetrahydrocannabinolic acid (THCA) and delta-9 tetrahydrocannabinol (THC). THCA is the non-psychoactive acid form of delta-9 THC. The Cannabis plant synthesizes THCA, but not THC. The concentrations of THC in a Cannabis sample are due to THCA converting to THC.
>
> The 2018 Farm Bill requires that testing to determine the amount of delta-9 THC be done using "post-decarboxylation or other similarly reliable methods". Decarboxylation is a chemical process by which the carboxylic acid functional group of a molecule is removed. In relation to Cannabis and THC, decarboxylation refers to the process of transforming THCA into THC.
>
> The "other similarly reliable method" referred to in the 2018 Farm Bill is the use of an accepted mathematical formula which calculates the amount of Delta 9 THC that would be produced if a given amount of THCA was subjected to decarboxylation. That formula is: "% delta-9 THC + (0.877 X % THCA)" where % is the concentration of the molecule by mass.
>
> The correction value of 0.877 which is applied to THCA in this formula is derived by determining the difference in mass between THC and THCA by dividing the molecular mass of THC (314.45g/mol) and THCA (358.478 g/mol). 314.45 divided by 358.478 equals 0.877. This means that the mass of THC is 87.7% that of THCA. By multiplying THCA by 0.877, it is possible to determine how much THC will be in the sample once it is heated and decarboxylated.
>
> I reviewed the EVIO Labs certificate of analysis with a sampling date of November 28, 2017. The analysis for the sample featured on the lab report shows a "Total THC" concentration of 0.381% w/w. The Total THC concentration was calculated by adding the delta 9 THC concentration to the THCA concentration after it had been multiplied by 0.877 to correct for decarboxylation. The Total THC value of 0.381% represents the total amount of Delta-9 THC in the sample by dry weight after accounting for the conversion of THCA to delta-9 THC post- decarboxylation, as required by the 2018 Farm Bill.

Mr. Wilson's opinion is consistent with both federal and Oregon law. Oregon is a state that regulates its own hemp production under the 2018 Farm Bill. Oregon's testing requirements are reduced to administrative rule. THC is defined as  "THC" means tetrahydrocannabinol and has the same Chemical Abstracts Service Number as delta-9 THC. OAR 333-064-0100(61). THCA is defined as: "THCA" means tetrahydrocannabinolic acid, Chemical Abstracts Service Number 23978-85-0.OAR 333-064-0100(62). Total THC is defined as  "Total THC" means the molar sum of THC and THCA. OAR 333-007-0310 (66).

Finally, the rules set out  the formula for determining Total THC as follows:

Total THC must be calculated as follows, where M is the mass or mass fraction of delta-9 THC or delta-9 THCA:

M total delta-9 THC = M delta-9 THC + 0.877 x M delta-9 THCA.

OAR 333-064-0100(4)(a).

The U.S. Department of Agriculture interprets the 2018 Farm Bill in the same manner. It issued a Final Rule, "to establish the domestic hemp production program and to facilitate the production of hemp, as set forth in the 2018 Farm Bill."  The Final Rule reads in relevant part:

> **7 CFR Part 990**
> **[Doc. No. AMS-SC-19-0042; SCl9—990-2 FR]**
> **Establishment of a Domestic Hemp Production Program**
> **AGENCY:** Agricultural Marketing Service, Department of Agriculture (USDA).
> **ACTION:** Final rule.
> **SUMMARY:** This final rule supersedes the interim final rule that established the Domestic Hemp Production Program, as mandated by the Agriculture Improvement Act of 2018 (2018 Farm Bill). This rule includes regulations used by the Department of Agriculture (USDA) to approve plans submitted by States and Indian Tribes for the domestic production of hemp. This rule also includes regulations on the Federal hemp production plan for producers in States or territories of Indian Tribes that do not have their own USDA-approved plans. The program provides requirements for maintaining records about the land Where hemp is produced, testing the levels of total delta-9 tetrahydrocannabinol, disposing of non-compliant plants, licensing hemp producers, and ensuring compliance under the new program.

**********

**SUPPLEMENTARY INFORMATION:** This rule is issued under the authority of section 10113 of the 2018 Farm Bill (Pub. L. 115-334; December 20, 2018), which amended the Agricultural Marketing Act of 1946, as previously amended (7 U.S.C. 1621 et seq.) (AMA), by adding Subtitle G (sections 297A through 297E).

**********

<u>Laboratory Testing Requirements</u>

Section 297B(a)(2)(A)(ii) of the AMA requires that State and Tribal plans for primary regulatory jurisdiction include a "procedure for testing, using post-decarboxylation or other similarly reliable methods, delta-9 tetrahydrocannabinol concentration levels of hemp produced in the State or territory of the Indian Tribe." Since not all testing methods include decarboxylation, **AMS is requiring that the total THC, which includes the potential conversion of tetrahydrocannabinolic acid (THCA) into THC, be reported and used for purposes of determining the THC content of a hemp sample.**

The IFR included requirements on how laboratories conduct hemp testing for the purposes of regulatory compliance to assure that total THC levels were measured. Commenters provided extensive input on testing requirements, particularly the requirement to test for "total" THC instead of only "delta-9" THC. AMS is retaining this requirement.

AMS looked at current testing methodologies that would meet the decarboxylation requirement set in the 2018 Farm Bill. In gas chromatography (GC) testing, heat is applied to the sample, which decarboxylates THCA, producing delta-9 THC, so that the final delta-9 THC result is actually a total THC result. GC is the more traditional technique used for THC testing and was the technique used by Dr. Small in his research that derived the 0.3 percent threshold that was used as a basis for the 2018 Farm Bill requirement and is used by law enforcement as the threshold to differentiate hemp from marijuana. In his research papers, the 0.3 percent threshold is based on total available delta-9 THC, which is the sum of THCA and delta-9 THC in the plant material.

Liquid chromatography (LC) testing does not involve the use of significant heat, so that the THCA in a sample does not generally decarboxylate. Results can be reported for THCA and delta-9 THC separately. When LC is used, the total THC needs to be calculated post-testing in order to report results as a "post-decarboxylation" delta-9 THC value. The requirement to report the total THC value as the THC content regardless of testing methodology used ensures testing consistency across the program.

/ / /
/ / /

> **Samples must be tested using post-decarboxylation or other similarly reliable analytical methods by which the total THC concentration level reported accounts for the conversion of THCA into THC. Acceptable testing methodologies currently include gas or liquid chromatography with detection.**
>
> The total THC, derived from the sum of the THC and THCA content, shall be determined and reported on a dry weight basis.

\*\*\*\*\*\*\*\*\*\*\*

*C. Testing laboratories.*

> The THC level in representative samples must be at or below the acceptable hemp THC level. **Testing must be conducted using post-decarboxylation or other similarly reliable methods where the total THC concentration level measured includes the potential to convert THCA into THC**. Further, test results should be determined and reported on a dry weight basis, meaning the percentage of THC, by weight, in a cannabis sample, after excluding moisture from the sample. The moisture content is expressed as the ratio of the amount of moisture in the sample to the amount of dry solid in the sample.

\*\*\*\*\*\*\*\*\*\*\*

> The 2018 Farm Bill mandates that all cannabis be tested for THC concentration levels using "post-decarboxylation" or similar methods**. In the context of this part, "post- decarboxylation" means testing methodologies for THC concentration levels in hemp, where the total potential delta-9-tetrahydrocannabinol content, derived from the sum of the THC and THCA content, is determined and reported on a dry weight basis.** The post-decarboxylation value of THC can be calculated by using a chromatograph technique using heat, known as gas chromatography, through which THCA is converted from its acid form to its neutral form, THC. The result of this test calculates total potential THC. **The post-decarboxylation value of THC, or total THC, can also be calculated by using a liquid chromatograph technique, which keeps the THCA intact, and requires a conversion calculation of that THCA to calculate total potential THC. See also the definitions for decarboxylation and total THC.**

\*\*\*\*\*\*\*\*\*\*\*

> "Total THC" is the post-decarboxylation value of THC, either after testing with gas chromatography or LC after using a conversion factor. LC does not use decarboxylation as part of the process and this addition is to account for the conversion of THCA into THC if decarboxylation was part of the process. The addition of 87.7 percent of THCA is applicable if the testing laboratory uses LC with detection to measure the THC. Total THC is the measured THC plus 87.7 percent of THCA.

\*\*\*\*\*\*\*\*\*\*\*

TESTING FOR TOTAL THC

The IFR requires that when hemp THC levels are measured using post-decarboxylation or other similarly reliable methods, **the total THC concentration level measured must include the potential to convert THCA into THC.**

\*\*\*\*\*\*\*\*\*\*\*

CALCULATING TOTAL THC

The 2018 Farm Bill and IFR identified and described the procedure for testing THC concentration using post-decarboxylation or other similarly reliable methods. **The term decarboxylated was defined in the IFR as the completion of the chemical reaction that converts THC-acid (THCA) into delta-9-THC, the intoxicating component of cannabis. The decarboxylated value is also calculated using a conversion formula that sums delta-9-THC and eighty-seven and seven tenths (87.7) percent of THC-acid.** The term decarboxylated is also commonly used in science and is the precursor to the term "post—decarboxylation," which appears in the 2018 Farm Bill's mandate on the acceptable cannabis testing methodologies for identifying THC concentration levels. AMS adopted this definition in this final rule.

*Conversion Efficiency:* Many stakeholders opposed USDA's conversion formula described in the IFR. Comments claimed the IFR was based on 100 percent conversion efficiency, which is only achievable under controlled laboratory testing conditions and is not possible outside of a laboratory environment. One comment stated the IFR failed to account for the inefficiency of the decarboxylation process.

\*\*\*\*\*\*\*\*\*\*\*

AMS is adopting the calculation provided in the IFR for determining total THC. However, the calculation has been clarified to explain the use of the molar conversion ratio to mathematically convert THCA to delta-9 THC. As written in the IFR, the calculation may have been misunderstood as containing a conversion efficiency factor, which is not the case. THCA cannot be added to delta-9 THC without accounting for the difference in molecular mass. Using stoichiometry, a molar conversion ratio (0.877) is used to mathematically convert THCA in terms of delta-9 THC. The molar mass of THCA is 358.47 g/mol and the molar mass of delta-9 THC is 314.45 g/mol. In other words, the mass of T HCA has to be adjusted or multiplied by 0.877 to be comparable to the mass of delta-9 THC.

**The 2018 Farm Bill requires that the THC content be expressed post-decarboxylation, which means that the conversion of THCA into delta-9-THC to account for the potential total THC in a sample must be taken into account**.

\*\*\*\*\*\*\*\*\*\*\*

SIMILARLY, RELIABLE TESTING METHODS

The 2018 Farm Bill states that State, Tribal, or USDA plans shall include "a procedure for testing, using post-decarboxylation or other similarly reliable methods, delta-9 tetrahydrocannabinol concentration levels of hemp."

\*\*\*\*\*\*\*\*\*\*\*

The 2018 Farm Bill states that procedures for testing use post-decarboxylation or other similarly reliable methods to determine delta—9 tetrahydrocannabinol concentration levels in hemp. AMS stated in the IFR and further adopts the language in this final rule that at this time two methods meet this requirement for decarboxylation. The current acceptable testing methods include gas and liquid chromatography, including LC with UV detection. As other testing methods and alternatives are developed by industry, AMS will review and evaluate their compliance with the 2018 Farm Bill. At this time, genetic testing has not been determined to be a similarly reliable testing methodology.

\*\*\*\*\*\*\*\*\*\*\*

For the reasons stated in the preamble, AMS revises 7 CFR part 990 to read as follows:

**PART 990 — DOMESTIC HEMP PRODUCTION PROGRAM**

\*\*\*\*\*\*\*\*\*\*\*

**Authority:** 7 U.S.C. 16390 note, 1639p, 1639q, 1639r.
**Subpart A - Definitions**
**§ 990.1 Meaning of terms.**

\*\*\*\*\*\*\*\*\*\*\*

*Cannabis.* A genus of flowering plants in the family Cannabaceae of which *Cannabis sativa* is a species, and *Cannabis indica* and *Cannabis ruderalis* are subspecies thereof. Cannabis refers to any form of the plant in which the total delta-9 tetrahydrocannabinol concentration on a dry weight basis has not yet been determined.

\*\*\*\*\*\*\*\*\*\*\*

*Decarboxylated.* The completion of the chemical reaction that converts THC-acid (THCA) into delta-9-THC, the intoxicating component of cannabis. The decarboxylated value is also calculated using a molecular mass conversion ratio

that sums delta-9-THC and eighty-seven and seven tenths (87.7) percent of THC-acid ((delta—9 THC) + (0.877*THCA)).

*Decarboxylation.* The removal or elimination of carboxyl group from a molecule or organic compound.

**********

*Delta-9 tetrahydrocannabinol or THC.* Delta-9-THC is the primary psychoactive component of cannabis. For the purposes of this part, delta-9-THC and THC are interchangeable.

**********

*Hemp.* The plant species *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

**********

*Post-decarboxylation.* In the context of testing methodologies for THC concentration levels in hemp, means a value determined after the process of decarboxylation that determines the potential total delta-9 tetrahydrocannabinol content derived from the sum of the THC and THCA content and reported on a dry weight basis. The post-decarboxylation value of THC can be calculated by using a chromatograph technique using heat, gas chromatography, through which THCA is converted from its acid form to its neutral form, THC. Thus, this test calculates the total potential THC in a given sample. The post-decarboxylation value of THC can also be calculated by using a liquid chromatograph technique, which keeps the THCA intact. This technique requires the use of the following conversion: [Total THC = (0.877 X THCA) + THC]which calculates the potential total THC in a given sample. See the definition for decarboxylation.

**********

*Total THC.* Total THC is the value determined after the process of decarboxylation, or the application of a conversion factor if the testing methodology does not include decarboxylation, that expresses the potential total delta-9 tetrahydrocannabinol content derived from the sum of the THC and THCA content and reported on a dry weight basis. This post-decarboxylation value of THC can be calculated by using a chromatograph technique using heat, such as gas chromatography, through which THCA is converted from its acid form to its neutral form, THC. Thus, this test calculates the total potential THC in a given sample. The total THC can also be calculated by using a liquid chromatograph technique, which keeps the THCA

intact. This technique requires the use of the following conversion: [Total THC = (0.877 x THCA) + THC] which calculates the potential total THC in a given sample.

\*\*\*\*\*\*\*\*\*\*\*

(3) A State or Tribal plan must include a procedure for testing that is able to accurately identify whether the sample contains a total delta-9 tetrahydrocannabinol content concentration level that exceeds the acceptable hemp THC level. The procedure must include a validated testing methodology that uses post-decarboxylation or other similarly reliable methods. The testing methodology must consider the potential conversion of THCA in hemp into THC and the test result must report the total available THC derived from the sum of the THC and THCA content. Testing methodologies meeting the requirements of this paragraph (a)(3) include, but are not limited to, gas or liquid chromatography with detection. The total THC concentration level shall be determined and reported on a dry weight basis.

\*\*\*\*\*\*\*\*\*\*\*

## § 990.25 Standards of performance for detecting total delta-9 tetrahydrocannabinol (THC) concentration levels.

Analytical testing for purposes of determining total THC in cannabis plants shall meet the standards in this section.

\*\*\*\*\*\*\*\*\*\*\*

(g) At a minimum, analytical testing of samples for total THC must use post-decarboxylation or other similarly reliable methods approved by the Secretary. The testing methodology must consider the potential conversion of THCA in hemp into THC and the test result must reflect the total available THC derived from the sum of the THC and THCA content. Testing methodologies meeting the requirements of this paragraph (g) include, but are not limited to, gas or liquid chromatography with detection.

  (1) The total THC shall be determined and reported on a dry weight basis. Additionally, measurement of uncertainty (MU) must be estimated and reported with test results. Laboratories shall use appropriate, validated methods and procedures for all testing activities and evaluate measurement of uncertainty.

  (2) Any sample test result exceeding the acceptable hemp THC level shall be conclusive evidence that the lot represented by the sample is not in compliance with this part.

86 Fed. Reg. 5596-5691 (January 19, 2021) (emphasis added)

Reading the Farm Bill in conjunction with the CSA leads to only one conclusion: Cannabis containing a Delta-9 THC level above 0.3 is marijuana. Marijuana is a schedule I controlled substance. To determine if a sample is hemp or marijuana, the amount of THC must be calculated using post-decarboxylation or other similarly reliable methods where the total THC concentration level measured includes the potential to convert THCA into Delta-9 THC. Total THC is the total amount of Delta-9 THC determined after including the amount of Delta-9 THC the THCA in the sample would produce when converted by decarboxylation. In other words, the term total THC means total Delta-9 THC. The method used by EVIOS Labs to test the sample in question, (exhibits 4 & 5), using liquid chromatography and the following conversion formula : Total THC = (0.877 x THCA) + THC  is an approved procedure for testing cannabis to determine the total amount of Delta-9 THC in the sample.

The case law is scant on this matter. Defendant was only able to locate one case nationwide that adequately addressed the issue – *State v. Robertson,* 2017 Wash. App. LEXIS 2601 (Nov. 16, 2017). Although it pre-dates the 2018 Farm Bill, the analysis is persuasive and instructive regarding the precise issue raised by Plaintiffs' theory. In *Robertson,* defendant appealed from convictions for possession of marijuana with intent to deliver, among other convictions. *Id.* at 1. Relevant to this case, Robertson challenged the sufficiency of the evidence to convict her for marijuana possession, because she believed the State's cannabis testing should exclude THCA from the equation. *Id.* at 1-2.

In 2013 and 2014, Washington redefined the level of THC needed to declare cannabis as "marijuana" and the way experts tested the level of THC. *Id.* at 2. Robertson was arrested during the flux in amendments. *Id.* When arrested, the Washington State Patrol Crime Laboratory Division analyzed three samples of the recovered plants and found they contained 19.53% THC,

18.23% THC, and 19.93% THC. *Id.* at 6. The test did not distinguish between delta-9 THC and THCA (also called "THC acid"). *Id.*

On Appeal, Robertson argued the court must define marijuana as cannabis with a THC concentration above 0.3 percent <u>excluding</u> THCA. *Id.* at 13. That is precisely Plaintiffs' argument in this case, because that is the only way the EVIO test (Exhibit 3) could be read to determine the cannabis was hemp. The Court agreed with the State that the test must include THCA to give the statute proper effect noting:

> Delta-9 THC is the primary psychoactive ingredient in marijuana, whereas THC acid is nonpsychoactive and must be converted to delta-9 THC to influence the user. When someone smokes cannabis, the acid transmogrifies into delta-9 THC through a chemical process called decarboxylation.

*Id.*

At the time of Robertson's arrest Washington law defined marijuana as:

> [A]ll parts of the plant Cannabis, whether growing or not, with a THC concentration greater than 0.3 percent on a dry weight basis; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin.

*Id.* at 14.

The statute later noted,

> "THC concentration" means percent of delta-9 tetrahydrocannabinol content per dry weight of any part of the plant Cannabis, or per volume or weight of marijuana product, or the combined percent of delta-9 tetrahydrocannabinol and tetrahydrocannabinolic acid in any part of the plant Cannabis regardless of moisture content.

*Id.* at 15.

These definitions comport with both the federal and Oregon definitions, because all three render cannabis "marijuana" if the delta-9 THC concentration is greater than 0.3% on a dry weight basis. The Washington court enforced the statute that required including THCA in the calculation, to "avoid an implication that conversion, by combustion, of tetrahydrocannabinol acid into delta-

9 tetrahydrocannabinol is not part of the THC content that differentiates marijuana from hemp." *Id.* at 23-25. It upheld the conviction on that basis.

In this case, Plaintiffs' argument is no different. Plaintiff argues that the delta-9 THC value should be viewed in isolation and that the THCA converted to delta-9 by decarboxylation should be ignored. Plaintiff's argument is contrary to both federal and Oregon law.

## CONCLUSION

"Total THC" is the controlling value on any test to determine if a cannabis sample is hemp or marijuana. Total THC translates to total delta-9 THC. Total delta-9 THC means delta-9 THC + THCA post- decarboxylation. This is true because the heating (for example smoking it) converts THCA to delta-9 THC through the process of decarboxylation. To qualify as hemp and avoid regulation as a controlled substance, the cannabis in question must have a **total** THC value of less than .3% on a dry weight basis. The value for the cannabis used by plaintiff at the time of the fire was .381% making it marijuana a Schedule I controlled substance. Because it was a controlled substance, the policy exclusion for losses which occur during the manufacture or processing by an "insured' of a Controlled Substance applies. As a matter of law, Country did not breach its contract with plaintiff and is entitled to judgment as a matter of law.

DATED,  March 31, 2021.

                          FROHNMAYER, DEATHERAGE, JAMIESON,
                          MOORE, ARMOSINO & McGOVERN, P.C.

                          By:   */s/ Bernard S. Moore*
                                Bernard S. Moore, OSB #843051
                                moore@fdfirm.com
                                *Of Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing **DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** upon:

Mr. Nickolas N. Gower
ATTORNEY AT LAW
PMB #97 – 4776 Commercial Street SE
Salem, OR 97302
nick@gower.law
*Of Attorneys for Plaintiff*

Mr. R. Scott Taylor
TAYLOR & TAPPER
542 Lawrence Street
Eugene, OR 97401
Fax: 541-246-2424
Email: Scott@TaylorTapper.com
Of Attorneys for Plaintiff

☒ by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice.

☒ by mailing to said attorney a copy thereof, certified by me as such, contained in a sealed envelope, with postage paid, addressed to said attorney at said attorney's last known address and deposited in the post office at Medford, Oregon, on the date set forth below.

☐ by personally handing said attorney a copy thereof, certified by me as such, on the date set forth below.

☐ by faxing to said attorney a copy thereof, certified by me as such, during normal office hours, addressed to said attorney at said attorney's last known facsimile number as indicated above. Proof of such transmission is attached hereto.

Dated this 31st day of March, 2021.

*/s/ Bernard S. Moore*
Bernard S. Moore, OSB #843051
*Of Attorneys for Defendant*