Bernard S. Moore, OSB #843051
moore@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 East Barnett Road
Medford, OR 97504-8345
Telephone:  541-779-2333
Facsimile:  541-779-6379
    Of Attorneys for Defendant Country Mutual Insurance Company

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **PETER S. BOGARD and WENDY V. BOGARD**,<br>                    Plaintiffs,<br>     v.<br>**COUNTRY MUTUAL INSURANCE COMPANY**,<br>                    Defendant. | Case No. 1:19-cv-00705-AA<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>Oral Argument Requested |

Defendant Country submits the following response to plaintiffs' supplemental motion for summary judgment (which replaced their original motion), relying upon the accompanying evidence, points, argument, and authorities. Defendant further incorporates by reference pleadings and memoranda previously submitted to the Court, including its own motion for summary judgment and motion for leave to amend the answer.

/ / /

/ / /

Page 1 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION
                FOR SUMMARY JUDGMENT

**FACTUAL BACKGROUND**

On January 6, 2019, a fire occurred on the Plaintiffs' property when Peter Bogard left a container of coconut oil on a heat source unattended while making a salve from cannabis. (Compl. (ECF No. 3), ¶¶ 10, 16); Ex. 1 – Bogard Depo (43:14-25). Following the fire, plaintiffs filed a claim with Defendant Country Mutual Insurance Company ("Country"), which Country denied based on the controlled substances exclusion found in the policy. (Compl., ¶ 13). The controlled substances exclusion in the Policy states:

> **Exclusions - SECTIONS 2 through 6**
> **A.** "'We" do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not there was widespread damage or affects a substantial area or the loss arises from natural, man-made, or external forces, or occurs as a result of any combination of these.
> \*\*\*
> **17. Controlled Substance**
> The manufacture or processing by an "insured' or with any "insured's" knowledge of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.

(Compl., ¶ 15); Ex. 2 – Policy Excerpt. The Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812, specifically reference 7 U.S.C. 1639o which defines "Hemp" as: "The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Country seeks to enforce this exclusion by showing Plaintiffs' cannabis exceeded 0.3 percent THC on a dry weight basis.

The cannabis at the center of the dispute was tested for cannabinoid content, as summarized below. Ex. 3 – Lab Report.

| Cannabinoids | 2017 Harvest – Ex. 3 % weight |
|---|---|
| TOTAL THC: ((TCHA*0.877) + Δ9THC) | 0.381 % |
| THCA | 0.435 % |
| Delta 9-THC | <LOQ (below limit of quantification) |

Plaintiff admits the test was conducted on the cannabis involved in the subject fire. (Pf. Resp. to RFA No. 7 (Ex. 4)). He stored the cannabis in 55 gallon totes and placed CO2 dry ice in the totes in order to prevent product degradation. Ex. 1 – Bogard Depo, p. 57 line 16 – p. 59 line 3. Therefore, the EvioLabs testing was valid well beyond the arbitrary "valid through" date. (Wilson Decl., Ex. 5). The crux of this insurance coverage dispute centers on whether the plant material used by the plaintiff at the time of the fire was marijuana, which is illegal to possess under the 1970 Controlled Substances Act (CSA), or hemp, which was declassified from the CSA under the Agricultural Improvement Act of 2018 (2018 Farm Bill), 115 H.R. 2. Under the 2018 Farm Bill, cannabis containing less than 0.3 percent THC by dry weight is considered hemp, whereas cannabis which exceeds this threshold is still illegal marijuana under the CSA. AMA, 7 U.S.C. 1639o(1); 21 U.S.C. §802(16)(a).

The cannabis being used by the plaintiff at the time of the loss was illegal marijuana, a Schedule I controlled substance, because plaintiffs' crop exceeded 0.3 percent total THC concentration on a dry weight basis. (Compl., ¶¶ 11, 14). Plaintiffs contend that the cannabis was "hemp" based solely on its delta-9 THC content, ignoring THCA and total THC concentrations. It is Plaintiffs' burden of providing the trigger providing coverage *and* that an exception exists to the Policy's exclusion. (Pf. Resp. to RFA Nos. 1 and 2 (Ex. 4)).

/ / /

/ / /

**Page 3 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

## STANDARD – SUMMARY JUDGMENT

Summary judgment serves a gatekeeping function, empowering the court to resolve "whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The party moving for summary judgment has the burden of showing (1) the absence of genuine issues of material fact, and (2) that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). An issue is "genuine" when there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute of fact is "material" if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. The court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolome v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

## ARGUMENT

1. **Because the cannabis used at the time of the loss exceeded 0.3 percent Total THC, it was marijuana, and defendant Country was correct in denying the plaintiffs' claim under the controlled substances exclusion.**

Under both the CSA and the 2018 Farm Bill, the total THC result is the finding that controls the determination of whether the cannabis in question is in fact hemp or illegal marijuana. Because testing of plaintiffs' cannabis revealed a total THC concentration surpassing the 0.3 percent threshold permitted under the 2018 Farm Bill, the substance being used by plaintiffs at the time of the fire was, by law, controlled substance marijuana.

The 1970 Controlled Substances Act (CSA) defined marijuana broadly as "all parts of the plant Cannabis sativa L." and deemed it a Schedule I controlled substance, which is unlawful to possess, manufacture, or distribute. 21 U.S.C. §802(16)(a); 21 U.S.C. §§801 et seq.; 21 C.F.R. Part 1308.11. However, the Agricultural Act of 2018 (2018 Farm Bill) carved an exception for hemp by updating the definition to distinguish it from its illegal cousin, marijuana. Under the post-2018 Farm Bill framework, "hemp" is defined within Section 297A of the Agricultural Marketing Act

Page 4 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION
                FOR SUMMARY JUDGMENT

of 1946 (AMA, 7 U.S.C. 1621 et seq) as:

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, <u>acids</u>, salts, and salts of isomers, whether growing or not, <u>with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis</u>.

A.M.A., 7 U.S.C. 1639o(1) (emphasis added). The 2018 Farm Bill amended the 1970 CSA by declassifying hemp as a Schedule I controlled substance, removing hemp from the scope of the CSA, and shifting its supervision from the Drug Enforcement Administration to the United States Department of Agriculture (USDA). 21 U.S.C. §802(16)(b). However, "Cannabis plants exceeding the acceptable hemp THC level constitute marijuana, a schedule I controlled substance under the Controlled Substances Act." 7 CFR 990.27.

Botanically, both marijuana and hemp are derived from the same species of plant, *Cannabis sativa*. The cannabis plant naturally produces tetrahydrocannabinol, a cannabinoid which comes in two primary forms, tetrahydrocannabinolic acid (THCA) and delta-9 tetrahydrocannabinol (THC). *84 Fed. Reg.* 58523 (October 31, 2019); Ex. 6 – Expert Report. Delta-9 THC is the cannabis plant's primary intoxicating compound. *84 Fed. Reg.* 58523 (October 31, 2019). The molecular precursor to delta-9 THC is THCA, which is the non-psychoactive acid form of delta-9 THC. *84 Fed. Reg.* 58532 (October 31, 2019). When the THCA undergoes decarboxylation, a chemical process removing the carboxylic acid functional group of a molecule, the TCHA is converted to delta-9 THC. *84 Fed. Reg.* 58531-32; 7 CFR 990.1; Ex. 6 – Expert Report. As Plaintiff agrees, "[d]ecarboxylation occurs through exposure to light or heat (i.e. baking or smoking)." (Pf. Supp. MSJ, p. 3). Thus, THCA content reflects potential delta-9 THC, which could be accessible if transformed through decarboxylation. *84 Fed. Reg.* 58531-32; 7 CFR 990.1. Therefore, once THCA is converted to delta-9 THC, the total THC reflects the combined product of the THCA and pre-decarboxylyzed delta-9 THC. The total THC also reflects the full amount of accessible

psychoactive delta-9 THC in the cannabis. In other words, total THC *is* delta-9 THC.

In the context of cannabis testing, the statutes and regulations mandate that the effects of decarboxylation should be considered in evaluating THC concentrations so that testing values reflect "total potential delta-9 tetrahydrocannabinol content derived from the sum of the THC and THC-A content and reported on a dry weight basis." 7 C.F.R. 990.1 (defining post-decarboxylation); *2018 Farm Bill* § 297C(a)(2)(B) (requiring that testing use "postdecarboxylation or other similarly reliable methods"); § 297B(a)(2)(A)(ii) (same). In other words, tests that evaluate total THC, considering both THCA and delta-9 THC levels, control whether a particular substance falls above or below the 0.3 percent cutoff.

In suggesting Country should have covered the fire-loss claim, plaintiffs erroneously argue the Court should disregard tests that show the "total THC" levels exceeded the threshold permissible for hemp. As a result, Plaintiffs want Country to pay them for a fire destroying their illegal drugs. The plaintiffs' attempts to artificially narrow THC testing parameters to exclude total THC and THCA should be rejected because it overlooks the statutory definition of hemp, statutory directives requiring testing based on post-decarboxylation THC concentrations, and ignores controlling federal state regulations which dictate that total THC controls testing standards.

**A. Based on language regarding "acids" within the 2018 Farm Bill's definition of hemp, testing based on pre-decarboxylated delta-9 THC levels alone are insufficient to determine whether a particular sample qualifies as hemp or controlled substance marijuana.**

The text of the 2018 Farm Bill's[1] definition of "hemp" demonstrates that Congress intended THCA to be considered when evaluating whether a cannabis sample meets the 0.3 percent concentration threshold for hemp versus controlled substance marijuana. The 2018 Farm Bill

---

[1] Plaintiffs argue the Farm Bill is irrelevant while failing to acknowledge that all cannabis would remain illegal marijuana without the Farm Bill's protections. *Compare,* Pf. Supp. MSJ, p. 6 (stating 2018 Farm Bill differentiated hemp from marijuana for first time);

Page 6 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION
              FOR SUMMARY JUDGMENT

indicates that the definition of "hemp" includes "<u>acids</u> … with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Although the 2014 Farm Bill contained similar language when defining "industrial hemp," the 2014 Farm Bill did not include the term acids within the definition. 7 U.S.C. 5940(b)(2). The 2014 Farm Bill authorized states to administer pilot programs overseeing the cultivation of "industrial hemp". 7 U.S.C. 5940. Under the 2014 Farm Bill, cannabis could qualify as "industrial hemp" if tests showed delta-9 THC concentration levels fell below 0.3 percent, without any consideration of THCA or total THC content. 81 Fed. Reg. 156: 53395-53396 (August 12, 2016). This, however, would not alter the governing federal law that still made such product illegal. By adding additional language in the 2018 Farm Bill[2] which specifically indicates "acids" are to be considered when determining whether cannabis qualifies as hemp or marijuana, Congress indicated that that the testing evaluating only delta-9 THC (a method previously allowed under the 2014 Farm Bill) would be inadequate under the 2018 Farm Bill. Accordingly, the statutory definition of hemp found in the 2018 Farm Bill shows plaintiffs may not ignore tetrahydrocannabinolic acid content; testing requires chemical evaluation of total THC, not simply delta-9 THC.

By including consideration of "acid" content within the 2018 Farm Bill's definition of hemp, Congress indicated cannabis testing must show total THC levels fell below the 0.3 percent cutoff; otherwise, the subject cannabis cannot qualify as hemp shielded from the CSA's Schedule I treatment of marijuana. Although the 2014 Farm Bill permitted cultivation of industrial hemp as part of state administered pilot programs, industrial hemp continued to be subject to federal drug laws. *See* DEA/USDA/FDA joint "Statement of Principles on Industrial Hemp," August 2016. By contrast, cannabis shown to qualify as "hemp" under the 2018 Farm Bill is not considered a

---

[2] Which was signed into law December 20, 2018, before the subject fire. (Pf. Supp. MSJ, p. 6 FN 27).

**Page 7 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION
            FOR SUMMARY JUDGMENT**

controlled substance under the CSA. 21 U.S.C. §802(16)(b). The specific reference to "acids" within the 2018 Farm Bill's definition of "hemp" indicates that Congress wished to impose more stringent testing requirements, shielding cannabis from the scope of the CSA only if testing showed it qualified as "hemp" based on testing of total THC. Put another way, any substance shown to have total THC concentration levels above 0.3 percent cannot qualify under the 2018 Farm Bill's safe harbor definition of "hemp," even if delta-9 THC levels fall below the 0.3 percent threshold previously used for "industrial hemp" in the 2014 Farm Bill.

> **B. Because "postdecarboxylation" chemical testing standards are mandated under the 2018 Farm Bill, THCA must be considered in determining whether a substance is hemp or marijuana.**

In determining whether a particular cannabis sample qualifies as hemp or controlled substance marijuana, the testing framework described in the 2018 Farm Bill shows the total THC result is determinative. To ensure that a substance meets the legal definition of hemp under the 2018 Farm Bill, rather than crossing over the threshold to illegal marijuana, the cannabis must be tested properly, "using postdecarboxylation or other similarly reliable methods." *2018 Farm Bill* 297C(a)(2)(B); 297B(a)(2)(A)(ii).

Because decarboxylation refers to the process by which THCA is chemically transformed into delta-9 THC, the inclusion of "postdecarboxylation" within the statute establishes that THCA levels must be considered in determining whether a given substance is in fact hemp. If testing were narrowly construed using the method suggested by plaintiffs, which considers only pre-decarboxylated delta-9 THC rather than total THC, Congress' use of postdecarboxylation in promulgating testing standards would be rendered meaningless.

/ / /

/ / /

Page 8 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION
              FOR SUMMARY JUDGMENT

**C. Plaintiffs' narrow view of delta-9 testing requirements is belied by federal regulations promulgated by the USDA; the regulatory body for "hemp." The October 31, 2019 USDA interim final rule mandates that THC content must be calculated using a Total THC standard, accounting for the effects of THCA decarboxylation.**

The USDA has further reinforced the conclusion that total THC levels are the appropriate measure by explicitly invoking this standard within interim final rules issued October 31, 2019. 84 Fed. Reg. 211. Because the 2018 Farm Bill gave the USDA regulatory authority over the hemp industry and has directed the USDA to promulgate testing standards "using postdecarboxylation or other similarly reliable methods," the USDA interim final rules are dispositive. *2018 Farm Bill* § 297C(a)(2)(B); § 297B(a)(2)(A)(ii). The section titled "Sample and Testing for Delta-9 Tetrahydrocannabinol" in the interim final rule explains:

> The THC concentration of all hemp must meet the acceptable hemp THC level. <u>Samples must be tested using post-decarboxylation or other similarly reliable analytical methods where the total THC concentration level reported accounts for the conversion of delta-9-tetrahydrocannabinolic acid (THCA) into THC.</u>
>   […]
> <u>The total THC, derived from the sum of the THC and THCA content</u>, shall be determined and reported on a dry weight basis.

84 Fed. Reg. 211; 58524 (October 31, 2019) (emphasis added).

The section of the interim rule devoted to "Sampling and Testing for THC" requires the same procedure:

> THC levels in representative samples must test at or below the acceptable hemp THC level. Testing will be conducted using post-decarboxylation or other similarly reliable methods where the <u>total THC concentration level measured includes the potential to convert delta-9-tetrahydrocannabinolic acid (THCA) into THC</u>.

84 Fed. Reg. 211; 58529 (October 31, 2019).

The October 2019 USDA interim final rule was codified as 7 C.F.R. 990, requiring that THC concentrations be measured under the "Total THC" standard, which includes consideration of both THCA and delta-9 THC. References to the total THC standard appear throughout the code, such as in sections devoted to regulatory definitions of post-decarboxylation (7 C.F.R. 990.1),

Page 9 –   DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION
    FOR SUMMARY JUDGMENT

regulatory standards for plans by states who wish to self-regulating hemp cultivation (7 C.F.R. 990.3(a)(3)), and regulatory standards for the USDA administered hemp production plan (7 C.F.R. 990.25(b). These regulations each confirm that THC testing requires evaluation of total THC derived from measurements of delta-9 THC and THCA content, considering the effects of decarboxylation. Plaintiffs cannot simply ignore the undisputed chemical alteration to cannabis once decarboxylated.

Defendants' argument regarding total THC is bolstered by sections of the interim final rule devoted to mathematical formulas which the USDA considers to be "similarly reliable" in determining THC content compared to post-decarboxylation chemical testing. *2018 Farm Bill* § 297C(a)(2)(B); § 297B(a)(2)(A)(ii).  Building upon the 2018 Farm Bill, which allows alternate methods of testing of "similarly reliable method," the USDA interim final rule establishes an accepted mathematical formula which may be used to calculate THC content. 84 Fed. Reg. 211: 58532 (October 31, 2019); 7 CFR 990.1 (defining decarboxylated); 7 CFR 990.1 (defining postdecarboxylation); s*ee also* Ex. 6 – Expert Report.  The USDA accepted formula rejects the narrow framework suggested by plaintiffs, which considers only delta-9 THC levels. Instead, the USDA accepted formula proves that THC should be calculated by accounting for delta-9 THC that would be produced from THCA in the sample if the cannabis was subjected to decarboxylation. In other words, the formula directs that testing should be based on a total THC framework. With the understanding that delta-9 THC is 87.7% the molecular weight of THCA, experts can determine how much delta-9 THC will be in the sample once it is heated and decarboxylated. 84 Fed. Reg. 211: 58532 (October 31, 2019); 7 CFR 990.1; Ex. 6 – Expert Report. By multiplying existing THCA values by 0.877, and adding the existing delta-9 THC value, the total THC concentration of a sample can be calculated without actually subjecting it to decarboxylation. *Id.*

Plaintiffs submit the conversion rate should be lower, at approximately "0.52 to 0.613." (Pf. Supp. MSJ, p. 8). However, their own expert conceded, "there's kind of no argument around the 0.877 as the conversion factor." (Anthony Smith Depo. (Ex. 7), p. 8 lines 7-8). That is precisely why EVIO labs utilized that factor for its calculation. (Ex. 3, p. 1).

Exhibit 6 containing defendant's expert report conclusively establishes that the cannabis from the 2017 harvest used by plaintiff was marijuana based on calculations of total THC using the method described in the regulations. As Mr. Wilson explains in Exhibit 6,

> I reviewed the EVIO Labs certificate of analysis with a sampling date of November 28, 2017. The analysis for the sample featured on the lab report shows a "Total THC" concentration of 0.381% w/w. The Total THC concentration was calculated by adding the delta 9 THC concentration to the THCA concentration after it had been multiplied by 0.877 to correct for decarboxylation. The Total THC value of 0.381% represents the total amount of Delta-9 THC in the sample by dry weight after accounting for the conversion of THCA to delta-9 THC post- decarboxylation, as required by the 2018 Farm Bill.

The total THC formula and the 87.7% figure used by Mr. Wilson were both specifically endorsed by the USDA when it promulgated the interim final rule establishing a domestic hemp program pursuant to the 2018 Farm Bill. 84 Fed. Reg. 211: 58532 (October 31, 2019; 7 CFR 990.1).

Because Mr. Wilson used USDA approved analytical methods which accounted for the conversion of THCA into delta-9 THC, his opinion regarding THC concentration is dispositive. Mr. Wilson's conclusion that the total THC concentration in the sample was 0.381% by dry weight establishes that plaintiffs' cannabis surpassed the 0.3 percent THC threshold permissible for hemp under the 2018 Farm Bill. Thus, as a matter of law, the substance at the time of the fire loss was marijuana, a Schedule I controlled substance. Accordingly, Country's denial of plaintiffs' fire-loss claim was appropriate under the policy's controlled substances exclusion. The Court should deny the plaintiffs' motion for summary judgment, and enter judgment in defendant's favor.

/ / /

**Page 11 – DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

2. **Plaintiffs' efforts to establish liability based on the pleadings reflect a misunderstanding of the federal rules governing judicial admissions, and the relevance of the 2014 Farm Bill's definition of "industrial hemp" in the context of the CSA and 2018 Farm Bill.**

Contrary to plaintiffs' suggestion, defendant has not admitted the substance at issue was hemp under the 2018 Farm Bill, whether by judicial admissions or otherwise. Judicial admissions "are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Perez-Mejia v. Holder*, 641 F.3d 1143, 1151 (9th Cir. 2011). "To qualify as a judicial admission, the statement must be . . . deliberate, clear, and unequivocal . . . ." *Stahl v. Simon (In re Adamson Apparel, Inc.)*, 785 F3d 1285, 1299 (9th Cir 2015). A judicial admission is binding unless the pleading is amended or the statement is otherwise withdrawn. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995) ("Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."). A party may withdraw a purported judicial admission by recharaterizing the statement in a motion for summary judgment. *Id.*

In this case, the statement seized upon by plaintiffs does not qualify as judicial admission. In defendant's Answer, Country enters admissions to several paragraph of plaintiff's Complaint in a string citation format. One of the Answer's string citations admits Paragraph 16 of Plaintiff's Amended Complaint, which alleges Peter Bogard was using "industrial hemp" at the time of the loss. As defendant's motion to amend the pleading explains, the inclusion of reference to paragraph 16 of plaintiff's complaint within the string citation was inadvertent. Defendant's position in this lawsuit has, from the beginning, been that the substance involved was marijuana, and denial of the fire-loss claim was proper under the policy's controlled substances exclusion. Because defendant has attempted to clarify the statement by moving to amend the Complaint, and has explained its

Page 12 – **DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

position within the cross-motions for summary judgment, the alleged judicial admission should be deemed withdrawn.

Even if plaintiffs' understanding were correct that the statement constitutes a judicial admission (a proposition which defendant does not concede) and regardless of whether amendment is allowed, plaintiff's focus on the statement is misplaced. A closer reading of paragraph 16 in the Complaint shows any admission would be irrelevant. Paragraph 16 of Plaintiff's Amended Complaint reads as follows:

> 16. Where the origin of the fire occurred, prior to the Loss, Peter Bogard was making a CBD (cannabidiol) salve derived from industrial Hemp. (emphasis added)

The use of the term 'industrial hemp' is significant because this phrase is used by the 2014 Farm Bill, whereas the 2018 Farm Bill focuses on and uses the term 'hemp.' As noted above and on page nine of Plaintiffs' motion for summary judgment, the definitions of 'industrial hemp' in the 2014 Farm Bill and 'hemp' in the 2018 Farm Bill are similar, but distinguishable. Additionally, industrial hemp and "hemp" are treated differently under the CSA. *Under the 2014 Farm Bill all forms of cannabis (including industrial hemp) remained a Schedule I controlled substance, subject to the CSA's definition of marijuana*. Plaintiff's argument that the CSA "did not and does not contain a Total THC requirement" completely ignores that all marijuana, even "industrial hemp", remained illegal under the CSA until the 2018 Farm Bill created new testing requirements.[3] By contrast, the 2018 Farm Bill excepted cannabis which qualified as hemp from the CSA definition of marijuana.

Thus, even if Defendant's Answer were deemed a judicial admission that Peter Bogard was processing 'industrial hemp' at the time of the loss, the statements highlighted by plaintiffs are

---

[3] State pre-emption provisions only spare state laws that are "more stringent" than federal law. *See,* Farm Bill, Section 10113 (page 430).

**Page 13 – DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

irrelevant to whether Peter Bogard was using a controlled substance when the fire occurred. Because this case hinges on application of the controlled substance exclusion in the policy, and whether the cannabis was "hemp" under the 2018 Farm Bill or marijuana under the CSA, any alleged admissions regarding "industrial hemp" are inconsequential.

## CONCLUSION

Because regulations mandate that tests detecting delta-9 THC concentration levels must also account for THCA under a total THC standard, plaintiffs are wrong in arguing delta-9 THC levels alone are determinative under the 2018 Farm Bill. Based on the statutory test and regulatory framework, it would be legal error to evaluate cannabinoid concentration using only delta-9 THC measurements, without accounting for the conversion of THCA during decarboxylation. Because the federal regulations mandate that cannabanoid content should be calculated using total THC formulas which include both delta-9 THC and THCA measurements, thereby accounting for decarboxylation, plaintiffs' motion for summary judgment should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 14 – DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

Testing of the 2017 cannabis crop showed total THC concentration of 0.381 percent by dry weight. This concentration exceeds the 0.3 percent allowable limit for cannabis to qualify as hemp under the 2018 Farm Bill. Consequently, the subject cannabis used by plaintiff at the time of the fire was marijuana, a Schedule I under the CSA. Denial of plaintiffs' fire-loss claim was appropriate under the policy's controlled substances exclusion was appropriate. As a matter of law, defendant is entitled to summary judgment in its favor.

DATED this 21st day of April, 2021.

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.

By:   */s/ Bernard S. Moore*
       Bernard S. Moore, OSB #843051
       *Of Attorneys for Defendant*

**Certificate of Compliance with Word Count Requirement**

Pursuant to LR 7-2(b), this response to plaintiffs' motion for summary judgement and memorandum in support of the motion do not exceed 11,000 words, or in the alternative, 35 pages. This complies with the applicable word-count limitation under LR 7-2(b), because it contains no more than 4,213 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Defendant's / / / upon:

Mr. Nickolas N. Gower
INSURANCE LAW
319 SW Washington Street, Suite 614
Portland, OR 97204
Email: nick@gower.law
*Of Attorneys for Plaintiff*

Mr. R. Scott Taylor
R. SCOTT TAYLOR INSURANCE ATTORNEY, PC
542 Lawrence Street
Eugene, OR 97401
Fax:  541-246-2424
Email:  scott@taylorinsurancelaw.com
*Of Attorneys for Plaintiff*

☒ by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice.

☐ by mailing to said attorney a copy thereof, certified by me as such, contained in a sealed envelope, with postage paid, addressed to said attorney at said attorney's last known address and deposited in the post office at Medford, Oregon, on the date set forth below.

☐ by personally handing said attorney a copy thereof, certified by me as such, on the date set forth below.

☐ by faxing to said attorney a copy thereof, certified by me as such, during normal office hours, addressed to said attorney at said attorney's last known facsimile number as indicated above.  Proof of such transmission is attached hereto.

Dated this 21st day of April, 2021.

                                      */s/ Bernard S. Moore*
                                      Bernard S. Moore, OSB #843051
                                      *Of Attorneys for Defendant*