Bernard S. Moore, OSB #843051
moore@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 East Barnett Road
Medford, OR 97504-8345
Telephone: 541-779-2333
Facsimile: 541-779-6379
	Of Attorneys for Defendant Country Mutual Insurance Company

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **PETER S. BOGARD and WENDY V. BOGARD**,<br><br>           Plaintiffs,<br><br>     v.<br><br>**COUNTRY MUTUAL INSURANCE COMPANY**,<br>           Defendant. | Case No. 1:19-cv-00705-AA<br><br>**DEFENDANT'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

**THERE IS NO ABIGUITY IN THE POLICY**

Plaintiffs argue that the policy is ambiguous as to whether the exclusion at issue incorporates the language of the 2018 Farm Bill. Plaintiffs ignore the plain language of the exclusion and Controlled Substances Act (CSA).

The exclusion reads in relevant part:

/ / /

/ / /

**Page 1 – DEFENDANT'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

Exclusions – SECTIONS 2 through 6

A. "We" do not insure for loss caused directly or indirectly by any of the following.

\*\*\*

17. Controlled Substance

Loss or damage arising out of the use, sale, delivery, transfer, possession, growing, production, processing, warehousing, transportation, or manufacturing, by any "insured" or with any "insured's" knowledge, of a controlled substance, as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended), regardless of whether the controlled substance is legal under any state law (for example: marijuana).

The CSA defines Marijuana as:

(16)(A) Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

(B) The term "marihuana" does not include—

(i) hemp, as defined in section 1639o of title 7; or

(ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination. 21 USC 802 (16)

Under the CSA, all parts of the Cannabis sativa L plant are marijuana unless they are hemp. The CSA does not define hemp. Rather, it states that hemp, as defined by 7 USC 1639o, is not marijuana. By doing so, the CSA references and incorporates the 2018 Farm Bill amendments to 7 USC 1639o specifically the statute's definition of hemp.

7 USC 1639o defines hemp as:

(1) Hemp. The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or

not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

The only way to establish that a sample is hemp and not marijuana is to show that it meets the definition of hemp found in the 2018 Farm Bill. Because the exclusion incorporates the CSA, which in relevant part incorporates the 2018 Farm Bill, the exclusion incorporates the Farm Bill and its testing protocols.[1]

## THERE IS NO AMBIGUITY THAT POST DECARBOXALATED THCA MUST BE INCLUDED IN DETERMINING DELTA-9 THC CONTENT

The cannabis plant produces tetrahydrocannabinol, in two primary forms, tetrahydrocannabinol acid (THCA) and delta-9 tetrahydrocannabinol (THC). When THCA undergoes decarboxylation, it is converted to delta-9 THC. (Expert Report, Ex 4 to Defendant's Supplemental Motion for Summary Judgment). The resulting delta-9 THC reflects the additional delta-9 THC, which could be accessible in the sample and which the 2018 Farm Bill requires be included when determining if a sample is hemp or marijuana.

The U.S. Department of Agriculture Final Rule reads in part:

> The 2018 Farm Bill mandates that all cannabis be tested for THC concentration levels using "post-decarboxylation" or similar methods. **In the context of this part, "post- decarboxylation" means testing methodologies for THC concentration levels in hemp, where the total potential delta-9-tetrahydrocannabinol content, derived from the sum of the THC and THCA content, is determined and reported on a dry weight basis.**

86 Fed. Reg. 5596-5691 (January 19, 2021) (emphasis added)

In other words, total THC *is* total delta-9 THC.

/ / /

---

[1] Plaintiffs argue the law at the time is all that matters to this coverage outcome and, even if such argument is correct (a matter not admitted), the 2018 Farm Bill was indisputably in effect at the time of the fire loss.

**Page 3 – DEFENDANT'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

In addition, the text of the 2018 Farm Bill's definition of "hemp" demonstrates that Congress intended THCA to be considered when evaluating whether a cannabis sample meets the 0.3 percent concentration threshold for hemp. The definition of "hemp" found in 7 USC § 1639o (1) includes "<u>acids</u> … with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis". By specifically stating that "acids" are to be considered when determining whether cannabis qualifies as hemp or marijuana, Congress required that the "acid from" of THC—THCA—be accounted for. Put another way, any substance shown to have total THC concentration levels above 0.3 percent is marijuana.

**EVIO LABS METHOD IS A SIMILARLY RELIABLE TESTING METHOD.**

Plaintiffs argue that the testing method used by the Evio Lab is not a "similarly reliable testing method". This argument is not supported by the USDA interim final rule on hemp production issued in October of 2019 or its final rule issued in March of 2021. The Final Rule reads in relevant part:

> CALCULATING TOTAL THC
>
> The 2018 Farm Bill and IFR identified and described the procedure for testing THC concentration using post-decarboxylation or other similarly reliable methods. **The term decarboxylated was defined in the IFR as the completion of the chemical reaction that converts THC-acid (THCA) into delta-9-THC, the intoxicating component of cannabis. The decarboxylated value is also calculated using a conversion formula that sums delta-9-THC and eighty-seven and seven tenths (87.7) percent of THC-acid.** The term decarboxylated is also commonly used in science and is the precursor to the term "post—decarboxylation," which appears in the 2018 Farm Bill's mandate on the acceptable cannabis testing methodologies for identifying THC concentration levels. AMS adopted this definition in this final rule. AMS is adopting the calculation provided in the IFR for determining total THC. However, the calculation has been clarified to explain the use of the molar conversion ratio to mathematically convert THCA to delta-9 THC. As written in the IFR, the calculation may have been misunderstood as containing a conversion efficiency factor, which is not the case. THCA cannot be added to delta-9 THC without accounting for the difference in molecular mass. Using stoichiometry, a molar conversion ratio (0.877) is used to mathematically convert THCA in terms of delta-9 THC. The molar mass of THCA is 358.47 g/mol and the molar mass of delta-9 THC is 314.45 g/mol. In other words, the mass of T HCA has to be adjusted or multiplied by 0.877 to be comparable

to the mass of delta-9 THC.

**The 2018 Farm Bill requires that the THC content be expressed post-decarboxylation, which means the conversion of THCA into delta-9-THC to account for the potential total THC in a sample must be taken into account**.

**The post-decarboxylation value of THC can be calculated by using a chromatograph technique using heat, known as gas chromatography, through which THCA is converted from its acid form to its neutral form, THC. The result of this test calculates total potential THC. The post-decarboxylation value of THC, or total THC, can also be calculated by using a liquid chromatograph technique, which keeps the THCA intact, and requires a conversion calculation of that THCA to calculate total potential THC. See also the definitions for decarboxylation and total THC.**

86 Fed. Reg. 5596-5691 (January 19, 2021) (emphasis added)

Even plaintiff's own expert conceded, "there's kind of no argument around the 0.877 as the conversion factor." (Anthony Smith Depo. (Ex. 7), p. 8 lines 7-8). Because Evio Labs used USDA approved analytical methods which accounted for the conversion of THCA into delta-9 THC, Mr. Wilson's opinion, based on the Evio Lab report, regarding THC concentration is dispositive. Mr. Wilson's conclusion that the total THC concentration in the sample was 0.381% by dry weight establishes that plaintiffs' cannabis exceeded the 0.3 percent THC threshold permissible for hemp under the 2018 Farm Bill. Thus, as a matter of law, the substance at the time of the fire loss was marijuana, a Schedule I controlled substance.

**CONCLUSION**

Plaintiffs argue the 2108 Farm Bill is irrelevant (except the part that legalizes hemp), apparently hoping the court will not recognize that all cannabis would remain illegal marijuana without the 2018 Farm Bill's amendment to the CSA. Compare, Pf. Supp. MSJ, p. 6 (stating 2018 Farm Bill differentiated hemp from marijuana for first time). Plaintiffs ask this court to declare their material hemp, but want the court to ignore the statutory testing scheme for determining if it is or not. Plaintiffs cannot have it both ways. The exclusion is clear and unambiguous. It

incorporates the CSA, which in turn incorporates the 2018 Farm Bill. The 2018 Farm Bill, in turn, requires THC content be expressed post-decarboxylation. That requires the conversion of THCA into delta-9-THC to account for the potential total THC in a sample. Total THC content must be no more than .3%. Plaintiff's material tested at .381%, making it marijuana a controlled substance. The exclusion applies. Defendant's motion should be granted.

DATED this 5th day of May, 2021.

>FROHNMAYER, DEATHERAGE, JAMIESON, MOORE, ARMOSINO & McGOVERN, P.C.
>
>By: */s/ Bernard S. Moore*
>    Bernard S. Moore, OSB #843051
>    *Of Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANT'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** upon:

Mr. Nickolas N. Gower
INSURANCE LAW
319 SW Washington Street, Suite 614
Portland, OR 97204
Email: nick@gower.law
*Of Attorneys for Plaintiff*

Mr. R. Scott Taylor
R. SCOTT TAYLOR INSURANCE ATTORNEY, PC
542 Lawrence Street
Eugene, OR 97401
Fax: 541-246-2424
Email: scott@taylorinsurancelaw.com
*Of Attorneys for Plaintiff*

☒ by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice.

☐ by mailing to said attorney a copy thereof, certified by me as such, contained in a sealed envelope, with postage paid, addressed to said attorney at said attorney's last known address and deposited in the post office at Medford, Oregon, on the date set forth below.

☐ by personally handing said attorney a copy thereof, certified by me as such, on the date set forth below.

☐ by faxing to said attorney a copy thereof, certified by me as such, during normal office hours, addressed to said attorney at said attorney's last known facsimile number as indicated above. Proof of such transmission is attached hereto.

Dated this 5th day of May, 2021.

      /s/ Bernard S. Moore
Bernard S. Moore, OSB #843051
*Of Attorneys for Defendant*