R. Scott Taylor, OSB No. 74324
542 Lawrence Street
Eugene, OR 97401
Ph: 541-485-1511 / fax: 541-246-2424
Scott@taylorinsurancelaw.com

Nick Gower, OSB No. 143274
319 SW Washington Street, Suite 614
Portland, Oregon 97204
Phone: (503) 507-3973
Fax: (503) 437-9170
Nick@gower.law

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| PETER S. BOGARD and WENDY V. BOGARD,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTRY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | CASE NO.: 1:19-cv-00705-AA<br><br>PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED |

Plaintiffs reallege and reassert its other briefings on this issue, as if fully set forth below.[1]

---

[1] *See* Dkt. #36, #37, #39, and #40.

## CONTEXT OF CASE

It is important for the Court to remember that this is not a criminal case, not a case involving a federal question, and not a civil claim involving an arms-length transaction. Rather, this an action under an insurance policy – a contract of adhesion – for policy benefits following a fire where the insurance company has denied the claim solely based on the Policy's Controlled Substances Exclusion.

## RESPONSE TO FACTS

First, Country's Response needlessly disparages its insureds, claiming that "Plaintiffs want Country to pay for a fire damaging their illegal drugs."[2] Country knows this is false. The Bogards were licensed hemp handlers operating under the 2014 Farm Bill's Hemp Pilot Program (pioneers in America's burgeoning hemp industry).[3] Country admits that the 2014 Farm Bill's Hemp Pilot Program did not require Total THC testing, or decarboxylation of THCA to delta-9 THC.[4] The provisions of the 2014 Hemp Pilot Program are still valid following the passage of the 2018 Farm Bill, until September 30, 2021.[5] Regardless of the status of the cannabis product as a Schedule I controlled substance at the time of the Loss, the Bogards are not seeking money to pay for illegal drugs!

---

[2] Dkt. #38 at 6.
[3] *See* DKt. #36 at 4 (*citing* Dkt. #37-5).
[4] Dkt. #38 at 7 (*citing* 81 Fed. Reg. 156: 53395-53396).
[5] Pub. L. 115–334, title VII, § 7605(b), Dec. 20, 2018, 132 Stat. 4829, as amended by Pub. L. 116–159, div. A, § 122, Oct. 1, 2020, 134 Stat. 714, provided that: "Effective on September 30, 2021, section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) is repealed."

Second, Country's motion attempts to claim that that THCA and delta-9 THC are the same cannabinoid. Specifically, Country claims "[t]he cannabis plant naturally produces tetrahydrocannabinol, a cannabinoid which comes in two primary forms, tetrahydrocannabinolic acid (THCA) and delta-9 tetrahydrocannabinol (THC)."[6] Neither of the cited materials support this new characterization that THCA and delta-9 THC are the same cannabinoid.

Country's expert makes clear that THCA and delta-9 THC are separate cannabinoids, when he states "[t]he concentrations of THC in a Cannabis sample are due to THCA converting to THC"[7] and "[d]ecarboxylation is a chemical process by which the carboxylic acid functional group of a molecule is removed. In relation to Cannabis and THC, decarboxylation refers to the process of **transforming THCA into THC.**"[8] Second, Country admits that THCA is a molecular precursor to THC.[9] Accordingly, despite Country's attempts to characterize differently in its briefing, THCA is not delta-9 THC.



[10]. This distinction is pivotal.

---

[6] Dkt. #38 at 5 (citing *84 Fed. Reg.* 58523 (October 31, 2019); Dkt. #38-6 – Expert Report)).
[7] Dkt. #38-6 at 1.
[8] Dkt. #38-6 at 1 (emphasis added).
[9] Dkt. #38 at 5 (citing *84 Fed. Reg.* 58523 (October 31, 2019)).
[10] Dkt. #37-6 - Wang, et al. (Figure 1).

## REPLY

The exclusion of hemp from Schedule I of the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 (as amended) has a plain meaning. The Bogards maintain the Court's interpretation is limited to the four-corners of the Policy, which incorporate the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended). The parties to this insurance contract did not intend to be subject to any other statutes, regulations, or agency rules other than those specifically referenced (or mandated by the insurance code). The Policy's Controlled Substances Exclusion was not mandated by the Oregon Insurance Code, but an invention by Country that was unilaterally foisted upon its insureds.

Instead of defining what a controlled substance was in its own words, Country's Policy relies on the definitions of the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended).[11] Country's reliance on federal statutes for definitions does not escape the traditional analysis for interpreting an insurance policy. Country provides no basis in any of its briefings for expanding the interpretation of an insurance policy into a federal question involving a complex analysis of various statutes, regulations, and agency rules that are not referenced in the Policy and many of which were not even in effect at the time of the Loss.

Country's briefing focuses on Congressional intent under the 2018 Farm Bill; however, Oregon courts follow a well-established method in interpreting insurance policies.[12] "A court's goal in interpreting a policy is to determine the intent of the parties."[13] The policy is interpreted

---

[11] Dkt. #37-4 at 85 (endorsement amending the Policy's Controlled Substances Exclusion).
[12] *Farmers Ins. Exch. v. Crutchfield*, 200 Or App 146, 154 (2005)
[13] *North Pacific Ins. Co. v. Hamilton*, 332 Ore. 20, 24 (2001).

PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL  4
MOTION FOR SUMMARY JUDGMENT

from the perspective of the "ordinary purchaser of insurance."[14] The Court's three-step analytical framework for this inquiry consists of: (1) If the term has only one plausible interpretation, courts apply that interpretation and conduct no further analysis; (2) If a phrase has more than one plausible meaning, courts will examine the particular context in which the term is used within the policy and the broader context of the policy as a whole; and (3) If two or more plausible interpretations remain after all other methods of resolving the dispute are exhausted, only then will Oregon courts construe the ambiguous term against the drafter, that is, the insurer.[15]

1. **There is Only One Plausible Interpretation – Whether a Cannabis Sample Contained a Concentration more than 0.3% of Delta-9 THC is the Dispositive Factor in Whether the Bogards' Cannabis Product Was a Controlled Substance**

The plain meaning of the Policy only considers the concentration of delta-9 THC in a given cannabis sample. If the delta-9 THC concentration of the cannabis sample is no more than 0.3%, then the cannabis product is not a controlled substance.

The Policy only identifies delta-9 THC as a controlled substance and that is what the Court should consider. The Policy incorporated the definitions of a controlled substance under the Federal Food and Drug Law at 21 U.S.C.A. Sections 812 and 811. Section 812 excludes tetrahydrocannabinols from hemp as a controlled substance.[16] Section 812 cites to 7 U.S.C. § 1639o for the definition of hemp.[17] Hemp is defined as:

> [T]he plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids,

---
[14] *Totten v. New York Life Ins. Co.*, 298 Ore. 765, 771 (1985); *see also Botts v. Hartford Acci. & Indem. Co.*, 284 Ore. 95, 100 (1978).
[15] *Hoffman Constr. Co. of Alaska*, 313 Or at 469–71,
[16] 21 U.S. Code § 812 Schedule 1(c)(17)
[17] *See* 21 U.S. Code § 812 Schedule 1(c)(17).

PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL           5
MOTION FOR SUMMARY JUDGMENT

isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.[18]

The interpretation of the insurance Policy stops at step one. The plaining meaning of "not more than 0.3% delta-9 THC" has only one plausible meaning: the dispositive factor between hemp (an uncontrolled substance) and marijuana (a controlled substance) <u>is the percentage of delta-9 THC</u>, not THCA, and not Total THC.

<u>"The Hemp material in question (Lab report ID: M170306-02) clearly contains undetectable levels of delta-9 tetrahydrocannabinol (<LOQ, i.e., 0.02%) and is therefore defined as Hemp and is specifically excluded as a Federally Controlled Substance."</u>[19] Accordingly, as matter of law, the Bogards' Loss is not excluded from coverage by the plain meaning of the Policy's Controlled Substances Exclusion.

2. **Even if Congressional Intent were Relevant, the Inclusion of the Term "Acids" in the Definition of Hemp Does Not Impose a THCA Decarboxylation Requirement or a Total THC Requirement**

Country seems to claim, without articulating any standards, that the Court should engage in statutory interpretation and discern Congressional intent by way of comparing the 2014 Farm Bill's definition of industrial hemp, the 2014 Farm Bill's Hemp Pilot Program testing standards, the 2018 Farm Bill's definition of hemp, and the 2018 Farm Bill's Hemp Pilot Program testing standards. With the exception of the 2018 Farm Bill's definition of hemp (which is specifically referenced in the Federal Food and Drug Law at 21 U.S.C.A. Section 812), none of the other

---

[18] 7 U.S.C. § 1639o (cited by 21 U.S.C. § 812 and 21 U.S.C § 802(16) (definitions for subchapter))
[19] Dkt. #37-6 at 1 (emphasis not added).

PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL  6
MOTION FOR SUMMARY JUDGMENT

statutes were incorporated into the Policy. An insured would not be put on notice that he/she were subject to a larger unincorporated body of law for coverage under an insurance policy.

If the Court engages in broader statutory analysis outside the four-corners of the document, Country's argument still fails. Country claims the insertion of the word "acids" in the 2018 Farm Bill's definition of hemp demonstrates that Congress intended THCA to be considered in determining whether the concentration of delta-9 THC on a dry weight basis is not more than 0.3% in a given cannabis sample.[20] Country's argument is highly speculative when the definition of hemp contains no reference to THCA, Total THC, or decarboxylation.

First, the term "acids" in the definition of hemp either does or does not refer to cannabinoid acids. Under either scenario, the Bogards' cannabis product was not a controlled substance. While THCA is a precursor to delta-9 THC, THCA <u>does not contain any</u> delta-9 THC.[21] Both parties admit, the only way THCA forms into delta-9 THC is by way of decarboxylation.[22] Accordingly, the use of the term "acids" is irrelevant because THCA does not contain delta-9 THC, it only decarboxylates *into* delta-9 THC under certain conditions.[23]

Nothing in the plain language of the definition of hemp indicates or requires the decarboxylation of THCA to THC, or a Total THC analysis, to satisfy the definition of hemp.[24] To reach Country's conclusion necessitates inserting words into the definition of hemp that are contrary to its plain meaning.

---

[20] *See* Dkt. #38 at 6-8.
[21] *See* Dkt. #38 at 5; *see also* Dkt. #38-6 at 1 and 10.
[22] Dkt. #38-6 at 1; Dkt. #37-6 at 4.
[23] Dkt. #38-6 at 1; Dkt. #38 at 5.
[24] *See* 7 U.S.C. § 1639o(1).

Second, the definition of industrial hemp under the 2014 Farm Bill and the definition of hemp under the 2018 Farm Bill are substantially similar – both definitions define hemp and industrial hemp in the context of "the plant Cannabis sativa L. and **any part of such plant**" . . . "whether growing or not" . . . "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."[25] The inclusion of the term acids or cannabinoids in the 2018 Farm Bill is a further clarification of what the term "any part of such plant means;" however, it did not materially change the definition and certainly does not provide any reference to THCA, Total THC, or decarboxylation.

Accordingly, if the 2014 Farm Bill's definition of industrial hemp's "any part of the plant" did not trigger a THCA or Total THC testing requirement in the 2014 Farm Bill, the insertion of the term "acids" or "cannabinoids" in the 2018 Farm Bill's definition of hemp also did not indicate more stringent standards, because acids and cannabinoids would still be included by the "any part of the plant" definition. The plain meaning is clear: the dispositive factor between hemp (an uncontrolled substance) and marijuana (a controlled substance) <u>is the percentage of delta-9 THC</u>, not THCA, and not Total THC.

---

[25] *Compare* 7 U.S. Code § 5940(a)(2) *with* 7 U.S.C. § 1639o(1).

### 3. Country has the Burden of Proof as to Whether the Bogards' Cannabis was a Controlled Substance at the Time of the Loss

The Bogards' suffered accidental direct physical loss to property that was insured by Country.[26] The Policy insured covered property against accidental direct physical loss caused by fire.[27] The Bogards have established the trigger of coverage.

Country, now having the burden of proving an exclusion,[28] attempts to shift the burden by claiming the Bogards seek coverage under an exception to the Policy's Controlled Substances Exclusion. This is false. The Policy's Controlled Substances Exclusion provides:

> **Exclusions – SECTIONS 2 through 6**
> **A.** "We" do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not there was widespread damage or affects a substantial area or the loss arises from natural, man-made, or external forces, or occurs as a result of any combination of these.[29]
> ***
> **17. Controlled Substance**
> Loss or damage arising out of the use, sale, delivery, transfer, possession, growing, production, processing, warehousing, transportation, or manufacturing, by any "insured" or with any "insured's" knowledge, of a controlled substance, as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended), regardless of whether the controlled substance is legal under any state law (for example: marijuana).[30]

---

[26] *See* Dkt. #3 ¶¶ 5,6, and 10; *see also* Dkt. #32 at ¶ 1.
[27] See Dkt. #37-4 at 56 ("For SECTIONS 2 through 6"); *see also* Dkt. #37-4 at 69 (insures property against losses caused by fire except as excluded).
[28] *See FountainCourt Homeowners' Ass'n v. FountainCourt Dev., LLC*, 360 Or 341, 360 (2016) (*citing Stanford v. American Guaranty Life Ins. Co.*, 280 Ore. 525, 527 (1977) (the insurer has the burden to prove an exclusion from coverage)).
[29] Dkt. #37-4 at 71.
[30] Dkt. #37-4. The Bogards' Amended Complaint and Country's summary judgment briefing cite to the Policy's Controlled Substances Exclusion *prior to* amendment by endorsement. *See* Dkt. #3 at 3 ¶ 15; *see also* Dkt. #35 at 2.

There is no exception to the Policy's Controlled Substances Exclusion.

Country attempts to use the definitions within the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended) to manufacture an exception to the exclusion. Specifically, Country claims the following section of the CSA shifts the burden of proof on the Bogards:

> Schedule I
> ***
> **(c)** Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:[31]
> ***
> **(10)** Marihuana[32]
> ***
> **(17)** Tetrahydrocannabinols, **except for tetrahydrocannabinols in hemp (as defined under section 1639o of title 7).**[33]

This section of the incorporated Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended) is not an exception that shifts the burden on the Bogards, but rather an explanation of which tetrahydrocannabinols are considered a controlled substance (those not derived from hemp) and which tetrahydrocannabinols are not considered a controlled substance (those derived from hemp).

---

[31] 21 U.S. Code § 812 Schedule 1(c).
[32] 21 U.S. Code § 812 Schedule 1(c)(10).
[33] 21 U.S. Code § 812 Schedule 1(c)(17) (emphasis added).

The plain language of the Policy provides **<u>no exception</u>** to coverage if the loss or damage arose from the processing or manufacturing of a controlled substance.[34] If the Bogards' cannabis product was not controlled substance at the time of the Loss, as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended), then there is coverage for the Loss. Otherwise, there is no coverage for the Loss. The burden of proof remains on Country.

4. **The 2018 Farm Bill's Hemp Program Testing Requirements Are Irrelevant Because They are Not a Part of the Policy. Regardless, at the Time of the Loss There was An Ambiguity as to What Satisfies "Post-Decarboxylation or Other Similarly Reliable Methods"**

For sake of brevity, the Bogards incorporate and reassert their prior argument on this issue.[35] First, the Policy does not incorporate the provisions of the 2018 Farm Bill, the Policy only excludes losses involving controlled substances "as defined by the Federal Food and Drug Law at 21 U.S.C.A. Section 811 and 812" (emphasis added)."[36] The Federal Food and Drug Law at 21 U.S.C.A. Section 811 and 812 contains no reference to Total THC, THCA, decarboxylation, or reference to the 2018 Farm Bill Hemp Program's testing provisions.[37]

Second, if the Court believes those testing requirements are incorporated in the Policy, there still remained an ambiguity at the time of the Loss as to what testing methods were similarly reliable to post-decarboxylation.[38] The Bogards' expert provides the opinion that the use of the 0.877 factor used in the Bogards' cannabis test was not a similarly reliable method to

---

[34] Dkt. #37-4 at 85.
[35] Dkt. #39 at 9-14.
[36] Dkt. #39 at 9-10.
[37] 21 U.S.C.A. ¶¶ 811, 812; see also 7 U.S.C. § 1639o(1).
[38] Dkt. #39 at 10-12.

PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL  11
MOTION FOR SUMMARY JUDGMENT

post-decarboxylation (because it presumes 100% efficient conversion); however, the use of a 0.52 to 0.613 would have been a similarly reliable to post-decarboxylation and place the Bogards' cannabis at no more than 0.3% Total THC.[39]

Country has failed to provide any expert opinion rebutting the opinion that at the time of the Loss a 0.52 to 0.613 factor for decarboxylation would have been a similarly reliable method for testing cannabis to post-decarboxylation. At a minimum, there are two plausible interpretations as to what satisfied the "post-decarboxylation or other similarly reliable methods" for testing.

**CONCLUSION**

For the aforementioned reasons, including Plaintiffs' prior briefing,[40] the Policy's Controlled Substances Exclusion is not applicable as a matter of law. "<u>The Hemp material in question (Lab report ID: M170306-02) clearly contains undetectable levels of delta-9 tetrahydrocannabinol (<LOQ, i.e., 0.02%) and is therefore defined as Hemp and is specifically excluded as a Federally Controlled Substance.</u>"[41] Accordingly, the Court should grant Plaintiffs' Motion for Partial Summary Judgment on coverage and proceed to resolving Plaintiffs' damages.

///
///
///
///
///
///
///
///

---

[39] *See* Dkt. #37-6 at 2; *see also* Dkt. #39 at 10-12.
[40] *See* Dkt. #36, #37, #39, and #40.
[41] Dkt. #37-6 at 1 (emphasis not added).

DATED: May 5, 2021

**GOWER LAW LLC**

s/ Nick Gower
_____
Nick Gower, OSB #143274
nick@gower.law
Associated Counsel for Plaintiffs

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains less than 11,000 words or alternatively 35 pages words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

# CERTIFICATE OF SERVICE

The undersigned certifies that on the below date, a true and correct copy of the foregoing

PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

by facsimile, first class mail, and/or deposit into the CM/ECF system on the following:

Country Mutual Insurance Company

By and through Defendant's counsel:

Bernard S. Moore, OSB # 843051
Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.
2592 East Barnett Road
Medford, Oregon 97504-8345
Fax: 541-779-6379

DATED: May 5, 2021

                                              **GOWER LAW LLC**

                                              s/ **Nick Gower**
                                              _____
                                              **Nick Gower**, OSB #143274
                                              nick@gower.law
                                              Associated Counsel for Plaintiffs