IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| PETER S. BOGARD; WENDY V. BOGARD, | Civ. No. 1:19-cv-00705-AA |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| COUNTY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

AIKEN, District Judge.

This matter comes before the Court on a Motion Partial Summary Judgment filed by Plaintiffs Peter and Wendy Bogard, ECF No. 36, and a Motion for Summary Judgment filed by Defendant County Mutual Insurance Company, ECF No. 35.[1] The Court has determined that this matter is appropriate for resolution without oral argument. For the reasons set forth below, Plaintiffs' Motion is GRANTED and Defendant's Motion is DENIED.

---

[1] The parties' Supplemental Motions for Summary Judgment, ECF Nos. 35 and 36, subsume and supersede the prior cross Motions for Summary Judgment, ECF Nos. 20 and 21.

Page 1 –OPINION & ORDER

# BACKGROUND

On January 7, 2019, Plaintiffs Peter and Wendy Bogard suffered a loss from a fire, which they assert is covered by an insurance policy, no A36K4901688, issued by Defendant County Mutual Insurance Company (the "Policy").

The fire occurred while Peter Bogard was in the process of making a salve from cannabis containing cannabidiol ("CBD") from hemp. Defendant denied coverage based on an exclusion in the Policy for controlled substances, which provided:

> **Exclusions—SECTIONS 2 through 6**
> A. "We" do not insure for loss caused directly or indirectly by and of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area or the loss arises from natural, man-made, or external forces, or occurs as a result of any combination of these.
>
> \*   \*   \*
>
> **17. Controlled Substance**
> Loss or damage arising out of the use, sale, delivery, transfer, possession, growing, production, processing, warehousing, transportation, or manufacturing, by any "insured" or with any "insured's" knowledge, of a controlled substance, as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812 (as amended), regardless of whether the controlled substance is legal under any state law (for example: marijuana).

Gower Decl. Ex. 4, at 71, 84 (the "Controlled Substances Exclusion"). ECF No. 37-4

Defendant asserted that Peter Bogard's activities constituted processing of a controlled substance and the loss was therefore excluded by the Policy. For the sake of clarity, the Court will first sketch out the contours of the relevant law concerning cannabis as a controlled substance before returning to the details of the loss event.

I.     **Cannabis as a Controlled Substance**

The plant *Cannabis sativa L.* contains more than 100 cannabinoids, including cannabidiol ("CBD"), delta-9 tetrahydrocannabinolic acid ("THCA"), and the "primary psychoactive component," delta- tetrahydrocannabinol ("delta-9 THC"). Gower Decl. Ex. 6, at 10. The cannabis plant synthesizes THCA, but not delta-9 THC. Def. Supp. Mot. Ex. 4, at 1; *see also* Gower Decl. Ex. 6, at 10 ("These neutral cannabinoids do not occur at significant concentrations in the plants."). THCA is "thermally unstable and can be decarboxylated when exposed to light or heat via smoking, baking, or refluxing." Gower Decl. Ex. 6, at 10. Delta-9 THC is formed through the decarboxylation of THCA and concentrations of delta-9 THC in a cannabis sample "are due to THCA converting to THC." Def. Mot. Ex. 4, at 1.

*Cannabis sativa L.* can be classified as marijuana or hemp. Under the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, marijuana (which appears in the statute as "marihuana") is classified as a controlled substance, as are "[t]etrahydrocannabinols, except for tetrahydrocannabinols in hemp (as defined under section 1639o of Title 7)." 21 U.S.C. §§ 812(c)(10), (17). Marijuana, in turn, "means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin," but does not include "hemp, as defined in section 1639o of Title 7." 21 U.S.C. §§ 802(16)(A), (B)(i).

Under 7 U.S.C. § 1639o, hemp is defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1).

The statutory scheme described above is a relatively recent development and, historically, federal law did not draw a distinction between marijuana and hemp for purposes of the Controlled Substances Act. The new system, which divides cannabis products into legal hemp and the still-controlled marijuana, was put in place by the Agricultural Improvement Act of 2018 (also called the "2018 Farm Bill"), which was enacted on December 20, 2018, and amended 21 U.S.C. §§ 802 and 812 and 7 U.S.C. § 1639o, as set forth above. Agricultural Improvement Act of 2018, PL 115-334, 132 Stat. 4490, at *4908, 5018 (Dec. 20, 2018).

## II.  The Loss Incident

On January 7, 2019, Plaintiff Peter Bogard was making a CBD salve from hemp in a detached garage. In his deposition, Peter Bogard testified

> I was making a salve and wandered away and ended up taking a nap. And then my wife got amorous, and all of a sudden, everything—all hell broke loose . . . The dogs started freaking out. The kids started freaking out, and so we ran down there, and the oil had caught on fire.

Def. Mot. Ex. 1 ("Peter Bogard Depo."), at 4.

In making his salve, Peter Bogard was using two batches of hemp, the 2017 Hemp Harvest and the 2018 Hemp Harvest. On November 28, 2017, Plaintiffs had the 2017 Hemp Harvest tested at EVIO Labs in Medford, Oregon. The 2017 Hemp

Harvest was found to contain a level of delta-9 THC "below the Limit of Quantitation" and THCA amounting to 0.435% by weight. EVIO Labs provided a "Total THC" level by using a formula established by Oregon regulation. Under this formula, the lab multiplied the amount of THCA by 0.877 to account for the process of decarboxylation and then added the result to the delta-9 THC to give the Total THC in the sample. In the case of the 2017 Hemp Harvest, EVIO Labs found a Total THC level of 0.381% by weight. The results of the testing of the 2017 Hemp Harvest were valid through November 2018. Gower Decl. Ex. 1, at 1.

The 2018 Hemp Harvest was tested by EVIO Labs on May 3, 2018. Testing yielded a delta-9 THC level of 0.0365% by weight and THCA of 0.254% by weight. By applying the formula described above, EVIO Labs found a Total THC of 0.259% by weight for the 2018 Hemp Harvest. The results of the testing of the 2018 Hemp Harvest were valid through May 3, 2019. Gower Decl. Ex. 2, at 1.

Plaintiffs submitted a claim under the Policy seeking coverage for the loss from the fire. On February 4, 2019, Defendant denied Plaintiffs' claim on the ground that:

> Your policy does not cover damaged caused by the manufacture or processing of a controlled substance. As you stated on January 10, 2019, the fire to your garage was caused by heating coconut oil as part of the manufacturing process of making your "Dr. B's CBDs" salves and tinctures containing cannabinoid, which is federal controlled.

Gower Decl. Ex. 3, at 1.

Plaintiffs commenced this action on May 6, 2019. ECF No. 1.

## LEGAL STANDARD

### I.  Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## II. Insurance Contract Disputes

A federal court, sitting in diversity, applies state law in interpreting an insurance policy. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). In Oregon, interpretation of an insurance policy is a question of law. *Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 241 (2008).

"The task in determining the meaning of a policy is to ascertain the intent of the parties, based on the wording of the policy itself." *Cain Petroleum Inc.*, 224 Or. App. at 241 (internal citation omitted). "Issues of contractual intent are determined by the objective manifestations of the parties based on the terms that they use and not on what they subjectively believe that the terms mean." *Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 503 (2007).

In determining the parties' intent under Oregon law, courts follow the analytical framework set out in *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 470-71 (1992). The *Hoffman* framework first requires the court to determine whether the insurance policy defines the provision, term, or phrase at issue. *Id.* at 469. If expressly defined, the court must apply the provided definition. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006).

When a policy does not define the phrase, the court must look to its plain meaning; a phrase has a plain meaning if it is susceptible to only one plausible interpretation. *Holloway*, 341 Or. at 650. If the court determines that there are two or more plausible interpretations of the phrase, the court must determine whether

the interpretations "withstand scrutiny." *Id.* A phrase withstands scrutiny if it continues to be reasonable after the interpretations are examined in light of, inter alia, the particular context in which the phrase is used in the policy and the broader context of the policy as a whole. *Id.* The court must "construe the text of the policy as a whole, rather than view particular parts of the policy in isolation." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 122 (2012).

If a single interpretation withstands scrutiny, the court must apply that interpretation. *Hoffman*, 313 Or. at 472-73. Where more than one interpretation withstands scrutiny, the court must conclude that the phrase is ambiguous. *Cain Petroleum, Inc.*, 224 Or. App. at 242 (explaining that "'[a]mbiguity' is a term of art . . . . refer[ring] to multiple, *reasonable* interpretations of the policy wording in light of the context in which the disputed provisions are employed and in the context of the policy as a whole." (emphasis in original)). If the court concludes that a term or phrase is ambiguous under this framework, "the ambiguity cannot be permitted to survive," and the phrase must be construed against the drafter. *Hoffman*, 313 Or. 470-71.

## DISCUSSION

Plaintiffs bring this claim for breach of contract, alleging that Defendant improperly denied Plaintiffs' claim under the Policy. The parties move for summary judgment on the issue of whether the Controlled Substances Exclusion applies, which in turn depends on whether Peter Bogard was processing a controlled substance at the time of the fire. In its motion, Defendant asserts that because the 2017 Hemp

Harvest contained a total THC level of 0.381%, it was properly considered marijuana, rather than hemp.

In assessing the parties' motions, it is necessary to bear in mind that this is an insurance contract dispute. The Court is therefore generally limited to the terms of the Policy itself, with genuine ambiguities to be construed in favor of the insured. *Hoffman*, 313 Or. 470-71. In addition, the "insured has the burden to prove coverage, while the insurer has the burden to prove an exclusion from coverage." *Fountaincourt Homeowners' Ass'n v. Fountaincourt Dev., LLC*, 360 Or. 341, 360 (2016) (internal quotation marks and citation omitted, alterations normalized).

In this case, the Controlled Substances Exclusion defines a "controlled substance" according to 21 U.S.C. §§ 811 and 812. Gower Decl. Ex. 4, at 85. Had the fire occurred only a short while earlier, there would be no question that the cannabis being processed by Peter Bogard was a controlled substance under that statute. However, as discussed above, the Controlled Substances Act was modified by the 2018 Farm Bill to divide cannabis into marijuana and hemp. Section 812(c)(17) of the Controlled Substances Act incorporated the definition of hemp given at 7 U.S.C. § 1639o(1) as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

The core of this dispute is whether the Court should consider only the actual level of delta-9 THC in the 2017 Hemp Harvest, which is effectively zero, or whether

it should consider the "Total THC" level, which includes the projected yield of delta-9 THC that would have been produced by the decarboxylation of the THCA in the hemp.

Of note, the statutes incorporated into the Policy are only concerned with the concentration of "delta-9 tetrahydrocannabinol" in the cannabis and make no reference to the level of THCA, which is an entirely different cannabinoid, although it is a biological precursor to delta-9 THC.  Under Oregon law, the "total THC" in a particular cannabis sample is derived from a formula used to project the delta-9 THC produced from decarboxylation of THCA by multiplying the amount of THCA by 0.877 and adding the result to the amount of delta-9 THC already present in the sample. OAR 333-064-0100(4)(a).  And in the months and years following the fire, a federal regulatory framework has evolved to gauge whether a particular cannabis sample is hemp or marijuana by using the same equation.  7 C.F.R. § 990.1.

But the Policy makes no mention of, or reference to, the Oregon regulatory standards for "Total THC."[2]  The federal regulatory standards did not yet exist at the time of the loss or when Defendant denied Plaintiffs' claim and are not referenced or incorporated into the Policy.[3]  Rather, the Policy references only 21 U.S.C. §§ 811 and 812 and those statutes, by further reference to 7 U.S.C. § 1639o(1), define hemp as cannabis containing 0.3% or less "delta-9 tetrahydrocannabinol" by dry weight.  By

---

[2] The Controlled Substances Exclusion references only the Controlled Substances Act definitions, "regardless of whether the controlled substance is legal under any state law (for example: marijuana)," Gower Decl. Ex. 4, at 85, which would seem to foreclose any consideration of Oregon law on hemp or marijuana classification.

[3] The final rule, 7 C.F.R. § 990, did not become effective until more than two years after the fire, on March 22, 2021.

the strictest reading of the statutes' plain terms, this might exclude THCA from consideration entirely. At best, it is ambiguous about whether THCA should be considered. And if THCA is to be considered, the statutes themselves provide no standard for converting THCA to delta-9 THC by decarboxylation.[4] The Court acknowledges that the later regulations supply such a standard but, as noted, those regulations did not yet exist at the time of the loss.[5] And, unlike 21 U.S.C. §§ 811 and 812, neither the Oregon regulations that existed at the time of the loss nor the later-adopted federal regulations are incorporated by reference into the definition of "controlled substance" used by the Policy.

The Court therefore considers the Policy by its plain terms and uses the unadorned statutory definition of hemp as containing 0.3% delta-9 tetrahydrocannabinol by weight. The record establishes that the 2017 Hemp Harvest contained a level of delta-9 THC that was below the threshold of quantitation and the 2018 Hemp Harvest contained a delta-9 THC level of 0.0365%. As both samples

---

[4] Defendant's expert, Jason Wilson, M.S., acknowledged as much in his deposition:
> Q. So do you know whether this formula, this 0.877 factor, was included in the Farm Bill?
> A. So that formula is how you would calculate specifically in the context of THCA and THC but in my written testimony I explain how you derive that formula. But that process is how you would calculate any chemicals post decarboxylation value by dividing the molecular masses.
> Q. Is that included, that mathematical formula, in the 2018 Farm Bill?
> A. No.

Second Gower Decl. Ex. 1, at 2. ECF No. 40-1.

[5] Plaintiffs have supplied the expert opinion of Anthony Smith, Ph.D., challenging the validity of the formula used by EVIO Labs (and subsequently adopted by federal regulation) for converting THCA to delta-9 THC by multiplying the mount of THCA by 0.877 because the "use of 0.877 assumes perfectly efficient, 100% conversion of THCA to delta-9 tetrahydrocannabinol—which is not feasible, either by analytical laboratory analysis or by user consumption of the material." Gower Decl. Ex. 6, at 2. It is not necessary for the Court to address this issue, however, because no standard for converting THCA to delta-9 THC is referenced in the Policy or in the statutes incorporated into the Policy's definition of "controlled substance."

contain levels of delta-9 THC below 0.3%, the Court concludes that the cannabis being processed by Peter Bogard was not a controlled substance as defined by the Policy. The Controlled Substances Exclusion does not, therefore, apply to bar Plaintiffs' claim for coverage under the Policy. Plaintiffs' Motion for Partial Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 21, and Supplemental Motion for Partial Summary Judgment, ECF No. 36, are GRANTED. Defendant's Motion for Summary Judgment, ECF No. 20, and Supplemental Motion for Summary Judgment, ECF No. 35, are DENIED.

It is so ORDERED and DATED this ___20th___ day of September 2021.

      /s/Ann Aiken
      ANN AIKEN
      United States District Judge